41 Cal.Rptr. 481]

[Civ. No. 28066. Second Dist., Div. One. Dec. 2, 1964.]

DAVID COHEN et al., Plaintiffs and Appellants, v. GRO-MAN MORTUARY, INC., et al., Defendants and Respondents.

Alex S. Chernow for Plaintiffs and Appellants.

Dryden, Harrington, Horgan & Swartz and Vernon G. Foster for Defendants and Respondents.

LILLIE, J.—This is one of four consolidated actions brought against a mortuary by members of the family of Sylvia Herman, deceased,—mother, two minor children, husband, married daughter, aunt, two brothers and a sister. Only plaintiffs David Cohen and Eleanor Coop, brother and sister of the deceased, appeal from a judgment on the pleadings in favor of defendants.

The complaint alleges that David Cohen and Eleanor Coop were brother and sister, respectively, of Sylvia Herman who died on April 24, 1961; that defendants took physical possession of her body for the purpose of preparing it for burial and conducting a funeral service; that on April 27, 1961, defendants negligently conducted the funeral service by wrongfully substituting the body of another in her place; that at the conclusion of the service they viewed the same, the direct and proximate result of which was shock and mental anguish which caused damages to each in the sum of $50,000; and that the wrongful conduct of defendants was committed with such wanton and wilful disregard for the sensibilities of plaintiffs as to constitute "implied malice" for which each is entitled to the sum of $50,000 exemplary damages. The answer admits defendants took possession of the body of Sylvia Herman for the purpose of preparing her body for her funeral and conducting a service; and that a partial service was had over the body of one not Sylvia Herman. At the outset of the trial defendants moved for judgment on the pleadings. The motion was granted in all four actions against all plaintiffs except Daniel Herman, decedent's husband, and Israel Cohen, a brother who had contracted to pay the funeral expenses.

Damages may be assessed against a mortician for physical suffering and illness caused to a contracting party by mental anguish and shock resulting from breach of a contract to preserve and prepare a body for burial—on the theory that the contract relates to his comfort in the manner in which the body of the deceased is prepared and laid to rest. (*Chelini* v. *Nicri* (1948) 32 Cal.2d 480, 481, 482 [196 P.2d 915].) However, if the gravamen of the within action is based on a contractual duty to properly conduct the funeral service of Sylvia Herman, that duty does not extend to these appellants. There is no allegation in the complaint

that either appellant had any contract with defendants for the preparation for burial and burial of the remains of their sister, nor does the pleading allege any facts from which such contractual relation with defendants could be inferred. Thus, on the basis of contract there appears to have been no duty owed by defendants to these appellants. That a contractual duty to another plaintiff was recognized under the complaint is apparent from the ruling of the trial court which permitted the action of Israel Cohen (a brother of Sylvia Herman), who contracted with defendants to pay her funeral expenses, to stand; defendants' motion for judgment on the pleadings as to him was denied.

Appellants claim that as ''surviving relatives'' they are entitled to recover for emotional shock ''arising out of beeach [*sic*] of duty by undertaker . . . based on tortious interference with rights involving dead human bodies.'' (A.O.B., p. 3.)

If the gravamen of the action be in negligence the character of the duty which the law, on a liability basis, imposes upon defendants under the facts pleaded must first be determined. ''It is an elementary principle that an indispensable factor to liability founded upon negligence is the existence of a duty of care owed by the alleged wrongdoer to the person injured, or to a class of which he is a member.'' (*Routh* v. *Quinn* (1942) 20 Cal.2d 488, 491 [127 P.2d 1, 149 A.L.R. 215]; *Richards* v. *Stanley* (1954) 43 Cal.2d 60, 63 [271 P.2d 23].) ''The problem must be approached at the outset from the viewpoint of the duty of defendant and the right of plaintiff, and not from the viewpoint of proximate cause.'' (*Amaya* v. *Home Ice, Fuel & Supply Co.* (1963) 59 Cal.2d 295, 307 [29 Cal.Rptr. 33, 379 P.2d 513].) Thus, under the pleadings at bar, did defendants owe appellants a legal duty relative to the conduct of their sister's funeral; what were appellants' rights in this connection?

 There is no right of property as such in the body of a dead person (*Enos* v. *Snyder* (1900) 131 Cal. 68 [63 P. 170, 82 Am.St.Rep. 330, 53 L.R.A. 221]) although a *quasi* property right to its possession has been recognized for the limited purpose of determining who shall have its custody for burial. (*Gray* v. *Southern Pac. Co.* (1937) 21 Cal.App.2d 240, 247 [68 P.2d 1011]; *O'Donnell* v. *Slack* (1899) 123 Cal. 285, 289 [55 P. 906, 43 L.R.A. 388].) The duty to bury a corpse and to preserve its remains is a legal right which

courts of law will recognize and protect; such right, in the absence of any testamentary disposition, belongs exclusively to the next of kin. (*O'Donnell* v. *Slack* (1899) 123 Cal. 285, 289 [55 P. 906, 43 L.R.A. 388].) The pleadings do not show that appellants had any such legal right—any right or duty to control the disposition of the body of their sister; and indeed, in the face of the record, they could not so allege. A plaintiff in one action is Daniel Herman, Sylvia's surviving husband; as to him the motion for judgment on the pleadings was denied. Further, it appears that there are three children and a parent (mother) surviving the deceased, each of whom is a plaintiff and against whom an adverse judgment was entered. (None of these persons is an appellant herein.) Under section 7100, Health and Safety Code, priority is given to the directions of the deceased concerning the disposition of his body; thereafter those having the right to control disposition of the remains are "in the order named (a) The surviving spouse. (b) The surviving child or children of the decedent. (c) The surviving parent or parents of the decedent . (d) . . . ." ▮ Where there is a surviving spouse, other relatives have neither the right to control the disposition of the remains of a deceased person nor the duty of interment and liability therefor. (*Benbough Mortuary* v. *Barney* (1961) 196 Cal.App.2d Supp. 861, 863 [16 Cal.Rptr. 811].) While appellants seek damages arising out of a breach of "duty of undertaker" based upon "tortious interference with rights involving dead human bodies," they have in neither their pleading nor their brief defined the "duty" or described the "right" upon which they base their cause of action. ▮ We find in these appellants no legally protected right in connection with the disposition of the body of their deceased sister, nor any corresponding duty to them on the part of defendants.

Our attention has been called to *Amaya* v. *Home Ice, Fuel & Supply Co.* (1963) 59 Cal.2d 295 [29 Cal.Rptr. 33, 379 P.2d 513]. While certain general principles relied upon therein may here be pertinent, the case is factually distinct from the one at bar. Plaintiff, mother of a 17-month-old boy, alleged fright and shock as the result of helplessly watching him crushed beneath the wheels of defendant ice truck and that all of her fright and shock was the result of her fear for the safety of her child and none out of fear for her own safety. The sole issue was "whether liability may be predicated on fright or nervous shock (with consequent bodily illness) in-

duced solely by the plaintiff's apprehension of negligently caused danger of injury to a third person.'' (59 Cal.2d 298). A divided court held that no cause of action was stated by plaintiff; that a negligent breach of duty toward one person does not subject the actor to liability toward another person for mental anguish in the absence of the exercise of a duty toward the person injured. According to the complaint the instant claim is not predicated on apprehension of negligently caused danger or injury to a third person, dead or alive — appellants do not say defendants had a duty to so conduct themselves with respect to anyone else as not to subject them (appellants) to an unreasonable risk of shock and mental anguish. Nor do they charge that the welfare and safety of the body was endangered, or that defendants in any manner damaged the remains either by mutilation or negligent care, or that they wrongfully assumed possession of the body or wrongfully assumed to perform a funeral service for it; moreover, they allege no intentional or deliberate act on the part of defendants—that they intended to substitute another body or even knew the body they had laid out was not that of Sylvia Herman. The sole conduct complained of is defendants' negligent substitution of the body of a stranger for that of appellants' sister for the funeral service; they simply allege that as a result of viewing a strange body at the conclusion of the service, they suffered shock and mental anguish. At most, their claim is for violation of a right to be free from shock and mental anguish—in the absence of the exercise of any legal duty toward them; but we know of no California case which, under these circumstances, declares such right to be legally protected. The *Amaya* case, *supra,* is even stronger than the one at bar, for there mental anguish was induced by the negligent conduct of the defendant in the breach of a duty to a third person; moreover, the plaintiff was the mother of the third person ''not just anyone,'' as pointed out by Mr. Justice Peters in a dissenting opinion. (59 Cal. 2d. 316.) While, in a given case, a brother and/or sister may have had a closer relationship with the deceased during his lifetime than members of his immediate family and may be more grieved at his passing, in the absence of any duty to them they are not entitled to recover simply because they are ''surviving relatives'' and defendants' negligent conduct violated their sensibilities. The same may be said here of appellants' right to freedom from invasion of their emotional security as was said in *Amaya* v. *Home Ice, Fuel & Supply Co.*

(1963) 59 Cal.2d 295 [29 Cal.Rptr. 33, 379 P.2d 513], relative to Mrs. Amaya's "undoubted interest in freedom from invasion of her bodily security" (p. 310), wherein no impact was involved. In that connection the court weighed and considered various factors in the form of administrative problems, mainly of proof of injury and setting some limit to liability, and certain socioeconomic and moral factors. These same considerations prevent us from creating a liability in this case.

*Deavors* v. *Southern Express Co.* (1917) 200 Ala. 372 [76 So. 288], relied upon by appellants, does not aid their cause; language therein appears to be more favorable to defendants. Therein plaintiff, sister of deceased, sued to recover for mental suffering on account of defendant's negligence in transporting the body of her brother from Kansas to Alabama. The alleged negligence consisted of allowing the coffin to remain on a siding in the rain whereby the body got wet. Another brother had paid the shipping charges. After reviewing numerous cases on the subject, the court said: "It therefore follows that a brother or sister may, in a proper case, recover damages as for mental pain and anguish, against a common carrier, the result of negligence or of the breach of a contract, in or about the carrying or delivery of the corpse of the deceased; but of course the case must be brought under circumstances and facts which impose liability on the one hand, and confer rights on the other, as declared and recognized in the cases above cited. The mere fact that there might be negligence or a breach of contract as to carrying of a dead body would not give each brother or sister, or next of kin, a separate action to recover damages as for mental pain and anguish." (P. 290 [76 So.].) A judgment based upon a directed verdict for defendant carrier, predicated upon the theory that plaintiff suffered no other actual damage and she could not, therefore, recover for mental anguish alone, was affirmed but without deciding the correctness of the reason. The action alleged a breach of contract (although plaintiff could not, and did not, prove she paid the charges) but, inasmuch as it was one in interstate commerce, damages were not allowable under federal law which did not permit recovery for mental pain and anguish resulting from a breach of contract. The result would have been the same had the action been controlled by Kansas law; but had the law of Alabama, which permitted recovery of damages for mental anguish arising out of breach of contract, applied no cause

of action was stated in favor of plaintiff because the evidence failed to show she had been a contracting party or had even contributed to the cost of the payment of the shipment. Nor does *Chelini* v. *Nieri* (1948) 32 Cal.2d 480 [196 P.2d 915], support appellants' action for damages in tort. Therein there existed a contract between defendant mortician and plaintiff to prepare the body of his mother for burial. Defendant promised to embalm it so that it would ''keep almost forever,'' and lay her in a hermetically sealed casket. A subsequent opening of the casket showing a badly decomposed corpse caused mental shock to plaintiff resulting in physical injuries to him. He sued for breach of contract for general and exemplary damages. The court affirmed the judgment but struck therefrom the exemplary damages as not recoverable for breach of contract in the absence of a showing of oppression, fraud or malice. The court, in affirming the judgment on the breach of contract to preserve the body of plaintiff's mother, held the contract to be one pertaining to plaintiff's happiness, comfort and personal welfare in the designation of a final resting place of his mother and that an award of general damages for breach thereof and for plaintiff's illness resulting from the same to be proper.

█ Predicated on an action in tort, appellants seek exemplary damages for implied malice under section 3294, Civil Code. We have hereinabove held that appellants have not sued on pleadings alleging facts which impose liability on defendants and confer rights on them (appellants). Further, the complaint has alleged no intentional tort. The extent of the pleading at bar in regard to malice is that the ''wrongful conduct of defendants . . . was committed with such wanton and wilful disregard of the sensibilities of plaintiff(s) as to constitute implied malice.'' No facts relative to malice are alleged, only allegations consisting of legal conclusions— that the acts were ''wrongful,'' ''wanton'' and ''wilful.'' This does not create a cause of action. (*Gray* v. *Southern Pac. Co.* (1937) 21 Cal.App.2d 240, 245-246 [68 P.2d 1011].) When the allegation is read as a whole, it simply amounts to a claim that because defendants negligently substituted another body for that of Sylvia Herman in the funeral service their conduct became wrongful, wanton and wilful. In our view such allegations do not plead malice express or implied (*Gombos* v. *Ashe*, 158 Cal.App.2d 517, 526 [322 P.2d 933]); they convey only conduct that was careless and negligent. In *McDonell* v. *American Trust Co.* (1955) 130 Cal.App.2d

296 [279 P.2d 138], plaintiff, suing for general damages, sought punitive damages based upon allegations that defendants "wilfully, consciously, intentionally and deliberately failed to keep the roof and drain-wells in working condition," and refused to repair the same with "a conscious, wilful and deliberate intention to injure and harm" them. He claimed that such was tantamount to oppression and malice in fact. Said the court at page 299: "Those facts do not spell an intentional tort (a conscious, deliberate intent to injure the plaintiffs) or conduct so recklessly disregardful of the rights of others (sometimes characterized as wanton or wilful misconduct) as would show the 'malice' *in fact* which the statute (Civ. Code, § 3294) requires as a predicate for punitive in addition to actual damages." (P. 299.)

There is no allegation in the complaint that defendants acted with the deliberate intention of causing shock to appellants, or that they were even aware that they had substituted a body for the deceased and had done so with conscious disregard of the sensibilities of anyone; nor do plaintiffs allege facts from which such conduct may be inferred. The extent of their allegations is that defendants' conduct was the result of negligence and carelessness. The complaint does not state a cause of action based upon malice in fact.

For the foregoing reasons the judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.