[Civ. No. 46048. Second Dist., Div. Five. Jan. 30, 1976.]

SINAI TEMPLE, Plaintiff, Cross-defendant and Respondent, v.
GLORIA KAPLAN, Defendant, Cross-complainant and Appellant;
MORRIS KAPLAN, Cross-defendant and Respondent.

**COUNSEL**

Raymond S. Finn for Defendant, Cross-complainant and Appellant.

Harold Easton and Michael J. Schiff for Plaintiff, Cross-defendant and Respondent.

Arthur M. Applebaum for Cross-defendant and Respondent.

## OPINION

**STEPHENS, J.**—There is no dispute as to the facts. On January 15, 1974, Sinai Temple (Sinai) filed a complaint for recovery of expenses for funeral services and related matters performed by it in connection with the burial of one Martin Kaplan.[1] The defendants were Gloria Kaplan,[2] the administratrix of Martin's estate, and Morris Kaplan, the father of the deceased.[3] Morris answered the complaint and denied liability by claiming to have executed the contracts on behalf of the estate. Gloria answered by general demurrer and by assertion of the affirmative defense of the statute of frauds.[4] In addition to answering the complaint, Gloria filed a verified cross-complaint on behalf of the estate and Alisa.[5] Cross-defendants answered and denied liability. After transfer to the superior court, cross-defendants filed motions for summary judgment and for judgment on the pleadings. The court entered judgment finding that "cross-defendant, MORRIS KAPLAN, is entitled to judgment as a matter of law, as to each and every cause of action in the cross-complaint, and the court finds from the moving papers and declarations above referred to that there are no triable issues as to any material fact in the cross-complaint, and the motion of cross-defendant, MORRIS KAPLAN, for summary judgment and judgment on the pleadings, as to each and every cause of action in said cross-complaint, is granted and judgment is hereby ordered in favor of cross-defendant, MORRIS KAPLAN, as follows: . . ." The court's ruling on the motion on behalf of Sinai is substantially the same as that quoted above.[6] In addition, however, Sinai was given judgment against the estate for $1,054.64 plus interest and a like judgment against Morris conditioned upon the estate's

[1] The total bill was in the amount of $1,054.64. A creditor's claim had been filed and rejected in Martin's estate.

[2] Gloria was the divorced wife of deceased and the guardian of Alisa, the six-year-old daughter of Gloria and deceased.

[3] Morris had made all of the funeral arrangements and had signed the contracts. Neither Gloria nor Alisa were consulted.

[4] By declaration in opposition to the motion for summary judgment, Gloria adequately raises the issue of Morris Kaplan's voluntarily obligating himself for the debt sought to be recovered.

[5] The first cause of action was against Morris for whatever sum might be rendered by judgment against the estate. Second and third causes of action sought damages against Sinai on behalf of Alisa. The remaining causes of action were against Morris or Morris and Raymon Kaplan (not a party to this appeal). The amount of damages alleged placed the action within the jurisdiction of the superior court. The case was transferred to that court.

[6] In the judgment entered on behalf of Sinai, the cross-complaint was dismissed with prejudice.

having inadequate assets to satisfy the judgment. This appeal followed the entry of the judgment.

The issues raised are: (1) Should judgment have been entered in favor of Sinai and against the deceased's estate for his funeral expenses? Should the cross-complaint against Sinai and against Morris Kaplan have been dismissed?

The first question posed cannot be answered with a simple "Yes" or "No." Section 7100 of the Health and Safety Code provides in part: "The liability for the reasonable cost of interment devolves jointly and severally upon all kin of the decedent in the same degree of kindred and upon the estate of the decedent; . . . " Section 7101 of the same code provides in part that "any relative or friend of a decedent" may assume "the duty of paying the expense of interment or the funeral services."[7] This provision, then, permits a volunteer to discharge the obligation imposed upon an estate to pay for the funeral expenses. Sections 950 and 951 of the Probate Code impose the obligation upon the estate.[8] As we understand these code provisions, for the person who has performed the services, there exists the absolute liability of the estate to pay the

---

[7] Section 7101 of the Health and Safety Code provides: "When any decedent leaves an estate in this state, the reasonable cost of interment and an interment plot of sufficient size to constitute a family plot and memorial including reasonable sums for either, or both, general and special endowment care of the plot proportionate to the value of the estate and in keeping with the standard of living adopted by the decedent prior to his demise, together with interest thereon from 60 days after the date of death, shall be considered as a part of the funeral expenses of the decedent and shall be paid as a preferred charge against his estate as provided in the Probate Code. Reasonable costs of funeral services, together with interest thereon from 60 days after the date of death, shall be considered as a part of the funeral expenses of the decedent and shall be paid as a preferred charge against his estate as provided in the Probate Code."

"If a claim for mortuary and funeral services, an interment plot or memorial is rejected the burden of proving that the cost of the funeral service, interment plot or memorial is disproportionate to the value of the estate and the standard of living adopted by the decedent while living shall be upon the executor or administrator rejecting the claim. This chapter does not prohibit any relative or friend of a decedent from assuming the duty or paying the expense of interment or the funeral services."

[8] Sections 950 and 951 of the Probate Code provide as follows: (§ 950)

"The debts of the decedent, the expenses of administration and the charges against the estate shall be paid in the following order:

"(1) Expenses of administration;

"(2) Funeral expenses;

"(3) Expenses of last illness;

"(4) Family allowance;

"(5) Debts having preference by the laws of the United States;

"(6) Wages, to the extent of nine hundred dollars ($900), of each employee of the decedent, for work done or personal services rendered within 90 days prior to the death of the employer. If there is not sufficient money with which to pay all such labor claims

reasonable expenses *unless a volunteer has satisfied the obligation.*[9] Likewise, we conclude that the person who has performed the funeral services may seek recompense from a volunteer who has assumed the duty of paying for such services.[10] The result of these conclusions is as follows: Where a volunteer has *assumed the duty,* he is primarily liable; however, in the absence of satisfaction of the debt, the estate is secondarily and absolutely liable. This liability is only limited by the requirement that costs be "proportionate to the value of the estate and in keeping with the standard of living adopted by the decedent prior to his demise. . . ." (Health & Saf. Code, § 7101). The net effect of these provisions, then, has been to impose upon a solvent estate a *primary* liability with recourse to surviving kin only where an estate is insufficient to pay for such expenses. (See *Estate of Kemmerrer,* 114 Cal.App.2d 810, 813 [251 P.2d 345, 35 A.L.R.2d 1393]; *Benbough Mortuary* v. *Barney,* 196 Cal.App.2d Supp. 861, 863 [16 Cal.Rptr. 811]; and 7 Witkin, Summary of Cal. Law (8th ed.) § 445, pp. 5887-5888.)

Our analysis requires the reversal of the summary judgment on behalf of Sinai against the estate as primary obligor and Morris Kaplan as secondary obligor. There remains a factual issue to be resolved, i.e., was Morris Kaplan a volunteer who *assumed the duty* of paying the funeral charges.[11] By this conclusion we recognize that, in the absence of Morris' satisfaction of the debt, the estate must pay for that which is purportedly not in accord with the desire of the daughter and her guardian. The

in full the money available shall be distributed among the claimants in accordance with the amount of their respective claims:

"(7) Mortgages, judgments that are liens, and other liens, in the order of their priority, so far as they may be paid out of the proceeds of the encumbered property. If such proceeds are insufficient for that purpose, the part of the debt remaining unsatisfied shall be classed with the general demands against the estate:

"(8) Judgments that are not liens rendered against the decedent in his lifetime and all other demands against the estate, without preference or priority one over another."

(§ 951)

"As soon as he has sufficient funds in his hands, after retaining sufficient to pay the expenses of administration, the executor or administrator must pay the funeral expenses, the expenses of the last illness, the family allowance, and wage claims to the extent of nine hundred dollars ($900) of each employee of decedent for work done or personal services rendered within 90 days prior to the death of the employer; but he is not obliged to pay any other debt or any legacy until, as prescribed in this article, the payment has been ordered by the court."

[9] Morris Kaplan has not appealed from the judgment effectively declaring him to be secondarily liable.

[10] We have been cited to no case, and have found none, which has declared "absolute" liability upon the estate. The code provisions and cases have imposed "primary" liability upon the estate. We deem this "primary" obligation an "absolute" one in the absence of satisfaction by a volunteer.

[11] We need not address ourselves to the statute of frauds issue; either the written contracts for the services were entered into on behalf of the estate, as Morris claims, or

services were nevertheless rendered, and Sinai, as an innocent party, has the right to compensation. Its position is tantamount to that of a materialman in a mechanic's lien action and to that individual's right to a lien against the res benefitted by his services.

We do not limit the mortuary as to which of the two parties liable it seeks payment from first. We merely recognize that though there is an obligation imposed by law upon the estate to recompense Sinai (within limits) for its services, the estate itself nevertheless has a right of reimbursement as against a volunteer who has assumed the burden of paying those costs (without that assumption being *on behalf of the estate*) providing it has paid them. Also, any charges exceeding the limits of costs imposed upon the estate are solely collectible against the volunteer.

■ For convenience of discussion we divide this second question into two parts, the first of which relates to the causes of action alleged in the cross-complaint against Sinai. These allegations are that Sinai was tortiously liable for either wilfully or negligently interfering with the child's (Alisa's) paramount right to dispose and inter decedent's body. Section 7100 of the Health and Safety Code provides in part:

"The right to control the disposition of the remains of a deceased person, unless other directions have been given by the decedent, vests in, and the duty of interment and the liability for the reasonable cost of interment of such remains devolves upon the following in the order named:

"(a) The surviving spouse.

"(b) The surviving child or children of the decedent.

"(c) The surviving parent or parents of the decedent.

"(d) The person or persons respectively in the next degrees of kindred in the order named by the laws of California as entitled to succeed to the estate of the decedent.

"(e) The public administrator when the deceased has sufficient assets. . . ."

Appellant is correct in her contention that the child, Alisa, had the paramount right to control disposition of decedent's body. This does not

they were voluntary assumptions of the duty to pay as Gloria claims. In either event. there was a writing which took Sinai itself outside of a voluntary status.

impose liability upon Sinai under the circumstances here present. Section 7111 of the Health and Safety Code[12] expressly exempts from liability a cemetery' which relies upon the written authorization of a person representing himself to be "(b) A surviving child or *parent*" (italics added) without actual notice that such representation is untrue. Here there was no falsehood as to Morris Kaplan's relationship to the deceased nor was there any notice given of a claim of higher priority of control over the remains. The dismissal of the cross-complaint as it related to Sinai was proper since there was an absolute defense established on the face of the pleadings. (See 4 Witkin, Cal. Procedure, § 161, p. 2816.)

■ The second portion of the second question relates to the causes of action against Morris Kaplan. The allegations are that Morris either wilfully or negligently interfered with (and conspired to so interfere with) the disposition and interment of the remains of decedent contrary to the desires and beliefs of decedent and his daughter, Alisa.

Our initial inquiry is to ascertain whether in fact a cause of action in tort exists for interference with the disposition of a decedent's body. It is generally held that there is no right of property as such in the body of a dead person (*Enos* v. *Snyder,* 131 Cal. 68, 69 [63 P. 170]; *Cohen* v. *Groman Mortuary, Inc.* 231 Cal.App.2d 1, 4 [41 Cal.Rptr. 481]; although a quasi-property right to its possession has been recognized for the limited purpose of determining who shall have its custody for burial[13] (*O'Donnell* v. *Slack,* 123 Cal. 285, 289 [55 P. 906]; *Gray* v. *Southern Pacific Co.,* 21 Cal.App.2d 240, 246-247 [68 P.2d 1011]; see Rest. 2d Torts (Tent. Draft No. 16) § 868, pp. 168-170; 48 A.L.R.3d § 2[b], p. 267).

---

[12] Section 7111 of the Health and Safety Code states:

"A cemetery authority may make an interment of any remains upon the receipt of a written authorization of a person representing himself to be any of the following:

"(a) The surviving spouse.

"(b) A surviving child or parent.

"(c) The next of kin.

"(d) A person who has acquired the right to control the disposition of the remains.

"A cemetery authority is not liable for cremating or making an interment pursuant to such authorization, unless it has actual notice that such representation is untrue."

[13] A terse history of this right can be found in the case of *Spiegel* v. *Evergreen Cemetery Co.,* 117 N.J.L. 90 [186 A. 585, 586], wherein the court stated in part: ". . . It was indubitably the plaintiffs' right, at the common law as well as in virtue of the obligation thus undertaken by the defendant company, to witness the interment. This is of the very essence and substance of a common-law right growing out of the domestic relation. The family tie binds us to the place of final repose of all that is earthly of our departed kin; and, therefore, it was plaintiffs' civil right, one bestowed and shielded by the law, to have knowledge altogether certain and specific, of the location of the last resting place, as well as the solace of the final leave taking. The early English common law sheds little light on

The duty to bury a corpse and to preserve its remains is a legal right which courts of law will recognize and protect.[14] Such right, in the absence of any testamentary disposition, belongs exclusively to the next of kin. (*O'Donnell* v. *Slack, supra,* 123 Cal. 285, 289; *Cohen* v. *Groman Mortuary, Inc., supra,* 231 Cal.App.2d 1, 4.)

the subject. During its formative period, the ecclesiastical courts had jurisdiction of the dead; and, in consonance with the doctrines of that jurisdiction, the common law early rejected the concept of property in the corpse and the ashes, and treated them as subjects largely of church superintendency. But the assumption of exclusive jurisdiction by the temporal courts brought radical changes of theory; and it is now the prevailing rule, in England as well as in this country, that the right to bury the dead and preserve the remains is a quasi right in property, the infringement of which may be redressed by an action in damages. The dead body is no longer res nullius. [Citations.]"

In addition, comment (a) of section 868, Tentative Draft No. 16 of the Restatement Second of Torts, provides in part: "One who is entitled to the disposition of the body of a deceased person has a cause of action in tort against one who intentionally, negligently or recklessly mistreats or improperly deals with the body, or prevents its proper burial or cremation. The technical basis of the cause of action is the interference with the exclusive right of control of the body, which frequently has been called by the courts a 'property' or a 'quasi-property' right. This does not, however, fit very well into the category of property, since the body ordinarily cannot be sold or transferred, has no utility, and can be used only for the one purpose of interment or cremation. In practice the technical right has served as a mere peg upon which to hang damages for the mental distress inflicted upon the survivor; and in reality the cause of action has been exclusively one for such mental distress. . . . "

[14] Recognizing the basis of action against undertakers as being interference with the right to possession and burial, California courts have held that an action sounding in tort will lie against an undertaker who wrongfully interferes with the right of the next of kin. (*Cohen* v. *Groman Mortuary, Inc.* 231 Cal.App.2d 1 [41 Cal.Rptr. 481].) Additionally, courts have recognized that an action sounding in contract will lie against an undertaker who enters an agreement to perform services, and who fails to perform them with that degree of skill and care expected of undertakers in general. (*Id.;* see also, *Chelini* v. *Nieri,* 32 Cal.2d 480 [196 P.2d 915].) *Cohen, supra,* impliedly recognized that an action in tort exists in favor of the surviving spouse or next of kin against an undertaker who commits wrongful acts in connection with embalming or preparation of a body for burial (for cases in other jurisdictions, see 48 A.L.R.3d § 3[a], p. 268). Although the few cases on the subject have not stated whether an action would lie, in tort or contract, against a relative who interfered with disposition of the body, we think that such an implication is a logical extension of the existing law. This court relies on section 868 of the Restatement Second of Torts (Tent. Draft No. 16). The Restatement recognizes that "[o]ne who intentionally, recklessly, or negligently removes, withholds, mutilates or operates upon the body of a dead person, or prevents its proper interment or cremation, is subject to liability to a member of the family of such person who is entitled to the disposition of the body." Comment (f) is significant in terms of the instant case: "The decisions in which recovery has been allowed for interference with a dead body have thus far been those in which the plaintiff has been the person entitled to disposition of the body, or one of a group, such as *children* of the deceased, who have *equal right of disposition*. . . . " (Italics added.) It is apparent that the Restatement recognizes an action by a person who has a right of disposition, and does not limit such action to the mortuary or cemetery. Thus, by implication, this action would necessarily exist against anyone who interfered with a dead body. For cases on this subject matter, see section 868 of the Restatement Second of Torts (Tent. Draft No. 16), *supra,* pages 171-172. The Restatement also notes that "[T]his

In the instant case, the child Alisa had the paramount right to dispose of the decedent's remains. (See Health & Saf. Code, § 7100, *supra.*)

Based on the foregoing analysis of the legal rights of a person over the disposition of a body, we believe that the clear trend of courts, both in California and in other jurisdictions, is to recognize that an action for tortious interference with a right to dispose of a decedent's remains exists against a close relative who interferes with that right. This conclusion is consistent with *Cohen v. Groman Mortuary, Inc., supra,* 231 Cal.App.2d 1, 4, and merely extends the existing liability to a party other than a mortician or a cemetery. Moreover, this tortious interference can be manifested by improper burial procedures which contravene the beliefs of the party who has the right to dispose of and inter the decedent. (See *Lott v. State* (1962) 32 Misc.2d 296 [225 N.Y.S.2d 434].)

Notwithstanding the mere existence of a cause of action in tort, we must direct our attention to the sufficiency of the pleadings to withstand Morris' motion for a judgment thereon. That portion of the pleadings which is relevant to this cause of action reads as follows: "[C]ross-defendants MORRIS KAPLAN and RAYMON KAPLAN knowingly and wilfully conspired and agreed among themselves to arrange the disposition of the remains of MARTIN KAPLAN in a manner contrary to the desires of cross-complainant and contrary to the customs, practices and beliefs of both the cross-complainant and the deceased. . . . [¶] As a proximate result of the wrongful acts of the cross-defendants and each of them, cross-complainant has been generally damaged in the sum of $1,000,000. . . . [¶] . . . and . . . is therefore entitled to punitive damages in the sum of $1,000,000." The sixth cause of action alleges the same facts, but is based on the theory of negligence.

It is clear from these averments that no *facts* relative to tortious interference with the disposition of the decedent's body were alleged. On the contrary, the allegations only consisted of legal conclusions; i.e., that the acts were "willful," "wrongful," and "negligent." Such conclusionary statements insufficiently set forth a cause of action. (*Cohen v. Groman*

---

[Restatement] Section has been changed from the First Restatement by broadening it to include negligent and reckless conduct, as well as intentional conduct; also by adding 'or prevents its proper interment or cremation.' and by removing the limitation of recovery to members of the family.

". . . . . . . . . . . . . . . . . .

"The more recent cases, by now a good majority, have allowed recovery for negligence resulting in the type of interference with the body which justifies liability for intentional interference."

*Mortuary, Inc., supra,* 231 Cal.App.2d 1, 4; *Gray* v. *Southern Pacific Co., supra,* 21 Cal.App.2d 240, 245-246.) Additionally, there were no *facts* alleged showing what the beliefs of the decedent or the child were, and why the funeral procedure was contrary to the beliefs of the decedent and his child, Alisa.[15]

In light of Gloria's declaration, so far as the necessary factual allegations are concerned, we would deem it an abuse of discretion not to have allowed an amendment to the pleadings so as to set forth the facts. That does not answer our problem, however. The appellant's pleadings were devoid of any allegation relative to injuries, mental or physical, which resulted from the alleged tortious negligent interference. These injuries must be pleaded to establish an action for tortious conduct. (See *Dillon* v. *Legg,* 68 Cal.2d 728, 746 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316]; *Vanoni* v. *Western Airlines,* 247 Cal.App.2d 793, 795 [56 Cal.Rptr. 115]; 3 Witkin, Cal. Procedure (2d ed. 1971) § 450, p. 2103; 4 Witkin, Summary of Cal. Law (8th ed. 1974) §§ 548-549, pp. 2815-2817.) The only mention of injury or damage is contained in the unverified statement of facts filed by appellant's attorney, Raymond S. Finn. That statement asserts that the child will suffer in later years when she learns of the funeral arrangements for her father. This assertion is tenuous and speculative at best. Furthermore, the statement was ordered stricken as it was not given under oath. Whether such matter could be proved or not, the court's correct action in striking the statements leaves the record bare of any factual allegation of injury.

Accordingly, we have concluded that the appellant has failed to plead a cause of action in tort for interference with the disposition of a decedent's body, and that the trial court properly granted Morris' motion for summary judgment and judgment on the pleadings.[16]

---

[15] In her declaration opposing respondent's motion for summary judgment appellant listed reasons why the funeral arrangements were contrary to decedent's and the child's beliefs. She stated the ceremony and cemetery were Jewish, that the decedent was an agnostic, and that the burial of decedent in a Jewish cemetery would refute those philosophic principles by which the decedent guided his life. Moreover, the daughter, Alisa, was raised as an agnostic, and therefore this religious burial would also be contrary to her beliefs.

[16] In the judgment granted to the respondent Morris Kaplan against appellant, both a motion for summary judgment and judgment on the pleadings were granted. Although we are uncertain whether the judge granted both motions due to ambiguity in the language, we are still able to reach the same result in either case. We have construed appellant's declaration in response to the motion for summary judgment as possible amendments to the pleadings. These additional facts would not change our conclusion that the pleadings failed to state a cause of action. Even assuming, arguendo, that respondent's motion for summary judgment may not have been able to stand by its own

The cause against the estate and Morris Kaplan is remanded for entry of judgment in accordance with this opinion. The judgment on the cross-complaint is affirmed.

Costs are awarded to Sinai; all other parties are to bear their own costs.

Kaus, P. J., and Hastings, J., concurred.

On February 23, 1976, the opinion and judgment were modified to read as printed above.

---

merits (see *Kramer* v. *Barnes*, 212 Cal.App.2d 440, 445 [27 Cal.Rptr. 895]), the conclusion must follow that the underlying pleadings were insufficient to state a cause of action.