[No. B001209. Second Dist., Div. Five. Mar. 8, 1984.]

FRANCINE ROSS, Plaintiff and Appellant, v.
FOREST LAWN MEMORIAL PARK, Defendant and Respondent.

**COUNSEL**

Herb Wiener for Plaintiff and Appellant.

Bonelli, Heib, Fuchs & O'Neal, John G. Bonelli and Stanley Sapiro for Defendant and Respondent.

**OPINION**

**ASHBY, J.**—Appellant Francine Ross appeals from the dismissal of her fourth amended complaint against respondent Forest Lawn following the granting of a demurrer without leave to amend. Appellant is attempting to establish respondent's liability for events surrounding the funeral and burial services of her 17-year-old daughter, Kristie.

We accept as true the following facts, as alleged in the complaint. (*Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 496 [86 Cal.Rptr. 88, 468 P.2d 216].) Appellant and respondent entered into a contract whereby Kristie's funeral and burial would be handled by respondent, a corporation engaged in business as a cemetery.[1] At the time the arrangements were being made appellant advised respondent that she wanted the funeral and burial services to be private. Only family members and invited guests were to be permitted to attend. In particular, appellant requested that no "punk rockers" be allowed at the services. Kristie had been a punk rocker. Appellant was fearful that her daughter's former associates would disrupt the private services, and so advised respondent. Respondent agreed to use all reasonable efforts and means to comply with appellant's request.

Many punk rockers attended both the funeral services in the chapel and the gravesite burial services. Neither their appearance nor comportment was

---

[1] Respondent's brief denies the existence of a contract between itself and appellant. Respondent maintains that Kristie's father contracted for the funeral services. The fact that this case is before us as an appeal from a sustained demurrer limits our consideration of the facts to those stated in the complaint. In any event, respondent's position with respect to the original contract does not affect its responsibilities based on subsequent oral contracts made with appellant.

in accord with traditional, solemn funeral ceremonies. Some were in white face makeup and black lipstick. Hair colors ranged from blues and greens to pinks and oranges. Some were dressed in leather and chains and twirled baton-like weapons, while yet another wore a dress decorated with live rats. The uninvited guests were drinking and using cocaine, and were physically and verbally abusive to family members and their guests. A disturbance ensued and grew to the point that police had to be called to restore order.

Later that day, in light of what took place at the burial, appellant became concerned that the punk rockers might return to the grave and vandalize or desecrate it. She requested respondent's agents to especially guard Kristie's grave, and they agreed to do so. Upon returning to the gravesite the next day, however, appellant discovered that the flowers and surface of the grave had been disturbed. Appellant then arranged to have Kristie's body moved to another, secret gravesite.

Appellant requested permission to hire someone to guard the original grave overnight until the body could be moved to the new grave. Respondent's agent first gave her the permission and then informed her that she could not have a private guard for the night.

### First Cause of Action

■■■ The complaint alleges that respondent, after agreeing to exclude the punk rockers from the cemetery grounds during the services, negligently failed to do so. Respondent demurred on the ground that appellant failed to show a right or duty on the part of respondent to exclude these people from the premises during the funeral and burial. Respondent relies on the interpretation of the Unruh Civil Rights Act, Civil Code section 51,[2] found in *Marina Point, Ltd.* v. *Wolfson* (1982) 30 Cal.3d 721 [180 Cal.Rptr. 496, 640 P.2d 115] and *In re Cox* (1970) 3 Cal.3d 205 [90 Cal.Rptr. 24, 474 P.2d 992], for the position that it was prohibited by law from excluding anyone from the cemetery. These cases have been misread.

*Cox* held that "the Civil Rights Act forbids a business establishment generally open to the public from arbitrarily excluding a prospective customer." (*In re Cox, supra,* at p. 217.) No argument is made that respondent is not a "business establishment," understandably so, given the broad parameters of that phrase. (See *Marina Point, Ltd.* v. *Wolfson, supra,* at p. 731; *Curran* v. *Mount Diablo Council of the Boy Scouts* (1983) 147 Cal.App.3d

---

[2]Civil Code section 51 states in pertinent part: "All persons within the jurisdiction of this state are . . . entitled to the full and equal . . . services in all business establishments of every kind whatsoever."

712, 728-730 [195 Cal.Rptr. 325].) However, the contract between appellant and respondent did not require exclusion of potential customers. Guests at funerals and burials do not seek to "obtain the services" of cemeteries. (*Marina Point, Ltd.* v. *Wolfson, supra,* at p. 738.) People attend funerals and burial services to grieve for the dead and to comfort the survivors. If their presence brings no comfort or worse brings only discomfort to family members, it is, ironically, the attendees who are interfering with the right of cemetery patrons to the services of the business establishment. Under *Cox,* a business may ask disruptive persons to leave the premises. Respondent would have us hold that an already bereaved family must not only suffer the indignity of intruders at their time of mourning, they must wait until the attendees "damage property, injure others, or otherwise disrupt . . . business" before the cemetery can ask them to leave. (*In re Cox, supra,* at p. 217.) The law cannot, and does not, demand this. Given the sensitive nature of the services offered by the cemetery, a policy permitting private funerals by which those who are not invited may not attend is a reasonable regulation "rationally related to the services performed." (*Id.*; see *Marina Point, Ltd.* v. *Wolfson, supra,* at pp. 741-743.)

Moreover, it is not clear from the pleadings that anyone had to be excluded from the premises. Appellant requested that the funeral and burial services be kept private. Respondent agreed to provide private services. Whether that required anyone's total exclusion from the business establishment during the services is a question of fact. It may be that respondent could have kept its end of the bargain not by exclusion but by temporarily limiting the areas open to the public.

We find that the complaint does express a duty to provide appellant with a private funeral. The duty is based on the oral contract between the parties by which respondent agreed to accommodate appellant by excluding uninvited guests. The fact that by its title the first cause of action purports to be in tort is of no consequence. ██ " '[T]he nature of an action and the issues involved are to be determined, not from the appellation given the pleading, but from the facts alleged and the relief that they support. [Citation omitted.]' " (*De Lancie* v. *Superior Court* (1982) 31 Cal.3d 865, 869 [183 Cal.Rptr. 866, 647 P.2d 142].)

Under California Health and Safety Code section 7100 the right to control the disposition of the remains of a deceased person vests in the parent or parents where there is no surviving spouse or child.[3] There being no alle-

---

[3]"The right to control the disposition of the remains of a deceased person . . . vests in, and the duty of interment . . . devolves upon the following in the order named: (a) The surviving spouse. (b) The surviving child or children of the decedent. (c) The surviving parent or parents of the decedent. . . . (Health & Saf. Code, § 7100.)

gation otherwise, we presume that the minor Kristie was survived by neither spouse nor child. The right to control her remains vested in her surviving mother, appellant.

■ In this state, as well as in other jurisdictions, the right of disposition has been found to include the right to be free from interference with the exercise of that right. (See *Sinai Temple* v. *Kaplan* (1976) 54 Cal.App.3d 1103 [127 Cal.Rptr. 80].)[4] In other jurisdictions, the right of disposition has been found to include, as well, "the right to determine the time, *manner* and place of burial." (*Fischer's Estate* v. *Fischer* (1954) 1 Ill.App.2d 528 [117 N.E.2d 855, 857]) (italics added.) *Seaton* v. *Commonwealth* (1912) 149 Ky. 498 [149 S.W. 871], held that a father could not be subjected to punishment for his refusal to permit his relatives and his wife's relatives to be notified so that they might attend the funeral of his infant daughter because "[t]hey had no legal right to be present. . . . In some localities funerals are not infrequently attended by invitation. Some are strictly private; while others are open to the public. These are matters which address themselves to the discretion and will of those in interest . . . ." (*Id.* at 873.) In *Haney* v. *Stamper* (1939) 277 Ky. 1 [125 S.W.2d 761], where the surviving spouse had the right to dispose, the brother of the deceased was prevented by the widow from attending the funeral services. The court stated the rule that the surviving spouse had "the paramount right not only to the custody of the dead body, but also to determine the time, manner and place of burial." This right "excludes the rights of others even though they be the next of kin. The two rights cannot occupy the same space at the same time; and, unless the right of the . . . [person in control of the remains] is to be deemed wholly illusory, *it must be exclusive.*" (*Id.* at p. 762; italics added.) We agree.

■ The right to control the disposition of the remains of the deceased as set forth in section 7100 must include the right to private funeral and burial services. The one in whom the right to control vests by statute has the right and the power to dispose of the remains without services, with public services or with services attended by invited guests only. Friends or family members who are uninvited have no right to be present.

■ Appellant's right to private services for Kristie included the power to exclude certain of Kristie's acquaintances, such as the punk rockers, from

---

[4] In California, actions for damages based on interference with the right to dispose have arisen in situations in which the body has been mishandled (*Allen* v. *Jones* (1980) 104 Cal.App.3d 207 [163 Cal.Rptr. 445]), negligently prepared or preserved by the cemetery authorities (*Chelini* v. *Nieri* (1948) 32 Cal.2d 480 [196 P.2d 915]), or even buried according to procedures which contravene the beliefs of the party who has the right to dispose (*Sinai Temple* v. *Kaplan, supra*, 54 Cal.App.3d at p. 1112).

attendance at the funeral and burial. Contrary to respondent's contention, respondent's agreement to use reasonable efforts to exclude these unwanted guests gave rise to a duty to enforce the promise by exclusion. The complaint states a cause of action for negligent breach of that promise.

■ Respondent contends that appellant has not alleged that had respondent called the police sooner the behavior described in paragraph 10 of the first cause of action would not have taken place. Included in the acts listed in paragraph 10 are drinking alcohol and taking cocaine by the punk rockers in attendance. It is reasonable to conclude that these acts would not have been committed in the presence of police officers. Appellant's allegation is not deficient for failing to show a causal connection between respondent's failure to timely perform certain acts and the punk rockers' failure to refrain from certain actions.

■ Respondent maintains that because appellant has not alleged physical injury no recovery is permissible. Respondent's duty to provide a private funeral and burial arose from respondent's agreement to do so. Appellant seeks damages for emotional rather than physical injury that resulted from respondent's failure to exclude the unwanted guests. The contract was a lawful contract which by its nature put respondent on notice that a breach would result in emotional and mental suffering by appellant. (*Crisci* v. *Security Ins. Co.* (1967) 66 Cal.2d 425, 434 [58 Cal.Rptr. 13, 426 P.2d 173], *Chelini* v. *Nieri, supra,* 32 Cal.2d 480, 482; *Cohen* v. *Groman Mortuary, Inc.* (1964) 231 Cal.App.2d 1 [41 Cal.Rptr. 481]; *Westervelt* v. *McCullough* (1924) 68 Cal.App. 198, 208-209 [228 P. 734].) Appellant's claim to damages for emotional distress is compensable as a result of a breach of contract. (*Wynn* v. *Monterey Club* (1980) 111 Cal.App.3d 789, 801 [168 Cal.Rptr. 878]; *Leavy* v. *Cooney* (1963) 214 Cal.App.2d 496 [29 Cal.Rptr. 580].)

## SECOND CAUSE OF ACTION

The complaint alleges that following the funeral appellant was fearful that the punk rockers group would return to the gravesite that night to vandalize or desecrate it. She requested "John Doe Olsen" and "John Doe McDonald" to arrange to have Kristie's gravesite especially guarded and watched. They agreed to make the arrangements. When appellant returned the next day, however, she saw that the flowers which had been left on the grave, and the surface of the grave had been destroyed. Appellant alleges that the destruction was caused by a return of the punk rockers to the gravesite during the night. She alleges that observing this destruction caused her mental and emotional harm.

Respondent correctly asserts in its brief that the complaint fails to allege that Olsen and McDonald are its agents or employees. However, it is reasonable to assume that appellant intended to make this allegation, and we so interpret the complaint.[5] (Code Civ. Proc., § 452.)

Respondent's contention that the complaint alleges no duty to "especially watch" the grave is defeated by the allegation of an express contract to guard Kristie's grave. Appellant alleges further that she informed respondent of her fear that the grave would be vandalized. Respondent may not successfully argue that the events of the night following the burial were not foreseeable since those very events were within the contemplation of the parties at the time the contract was made. (*Wynn* v. *Monterey Club, supra,* 111 Cal.App.3d at p. 799.)

Appellant alleges on information and belief that the group returned and vandalized the grave. Respondent objects to this form of pleading. The events of that night are not facts within appellant's special knowledge (*Hall* v. *James* (1926) 79 Cal.App. 433 [249 P. 876]), and the complaint will not be defeated on this ground.

█ Respondent takes exception to appellant's allegation that she was caused mental and emotional suffering because she was present at and observed the disinterment of Kristie's body. Respondent contends that no facts are alleged to establish its responsibility for appellant's decision to be present and her subsequent injury. The complaint states, however, that to be "assured that Kristie's body would be disintered (*sic*) and moved . . . in conformity with the arrangements" between the parties, appellant chose to be present. In light of respondent's performance up to the point at which appellant felt that a new gravesite was necessary, it was not unreasonable for appellant to feel she had to be there. We find that appellant has sufficiently demonstrated respondent's responsibility for her damages.

### THIRD CAUSE OF ACTION

█ The complaint alleges that appellant requested respondent's permission to hire a private guard to watch Kristie's grave until her body could be moved. Permission was granted but then, after appellant had all the arrangements made, the permission was retracted. Under respondent's analysis, no cause of action for emotional distress is stated by these facts be-

---

[5]The complaint states that appellant made this request of "John Doe Olsen and John Doe McDonald." Respondent correctly points out that it is nowhere alleged that these two defendants are the agents or employees of the cemetery. We will assume that appellant intended to so allege and not permit the count to be defeated on this basis. Appellant should have an opportunity to amend to state the connection between these defendants and respondent.

cause appellant eventually was allowed to have a private guard. But appellant is not alleging that she was injured because no guard was present. She alleges that her suffering was caused by the very fact that respondent changed its position, forcing her to beg and plead for permission at a time when she was already under great emotional stress. The third cause of action will not fail simply because respondent eventually relented.

## CONCLUSION

Appellant's complaint states three causes of action. Sustaining the demurrer without leave to amend was an abuse of discretion. (*Black* v. *Browne* (1940) 39 Cal.App.2d 606, 607 [103 P.2d 1012]; accord, *People* v. *McKale* (1979) 25 Cal.3d 626, 638 [159 Cal.Rptr. 811, 602 P.2d 731].)

The order dismissing the complaint is reversed.

Feinerman, P. J., and Hastings, J., concurred.

A petition for a rehearing was denied March 28, 1984, and respondent's petition for a hearing by the Supreme Court was denied May 16, 1984.