[Civ. No. 26584. Third Dist. Dec. 15, 1986.]

PAMELA KAREN HOLM, as Executor, etc., et al., Petitioners, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent;
LISA MISCO, a Minor, etc., et al., Real Parties in Interest.

1242

**COUNSEL**

George E. Murphy, Marjorie E. Manning and Bolling, Walter & Gawthrop for Petitioners.

No appearance for Respondent.

Charleton S. Pearse, Files, McMurchie, Foley, Brandenburger & Weill and Files, McMurchie, Foley, Brandenburger, Weill & Keeling for Real Parties in Interest.

## OPINION

**PUGLIA, P. J.**—In this mandamus proceeding we consider whether a trial court in a civil action brought under the Probate Code has the authority to order the exhumation and autopsy of the body of the deceased testator. For the reasons that follow, we conclude that no such authority exists.

In 1981 Edwin Robert Maleville (decedent) executed his will. It included provisions establishing a trust for the benefit of real parties in interest, the grandchildren of decedent's former wife Juanita. In 1984 decedent and Juanita separated and dissolution proceedings were commenced. The marriage was formally terminated in 1985, although litigation over the division of the couple's property remains unresolved.

On July 6, 1984, shortly after his separation from Juanita, decedent executed a new will revoking all previous testamentary dispositions, including the one made in 1981. The 1984 will did not include any provisions benefiting real parties in interest. On March 3, 1986, decedent passed away, and the 1984 will was admitted to probate. Real parties thereafter filed a petition to revoke probate pursuant to Probate Code section 380, contesting the 1984 will on the grounds that it was executed at a time when decedent was without testamentary capacity and was the product of fraud and undue influence. Simultaneous with the filing of that petition, real parties submitted to the probate court a separate pleading entitled "EX PARTE APPLICATION FOR ORDER ALLOWING PARTIAL AUTOPSY AND ANALYSIS."[1] This application sought leave to exhume the corpse of decedent for the purpose of permitting medical examiners retained by real parties to perform an autopsy on the brain.

In justification of this request, real parties argued that there is reason to believe decedent may have been suffering from "Alzheimer's Disease" or some other organic brain disorder at the time of his death and when he executed the 1984 will. It was real parties' contention that if examination of the brain tissue revealed the presence of such a disease, evidence to that effect would be relevant to the issues of testamentary capacity and susceptibility to the exertion of undue influence. To support this claim, real parties produced declarations, documentary evidence, and testimony from both lay and expert medical witnesses. In substance, this evidence showed that the death certificate listed "dementia" as one of the causes of death and that several friends, business contacts and family members had observed behavior

---

[1]Throughout, the parties and the probate court have treated this "Application" as a discovery matter, although none of the procedural formalities of California's statutory discovery scheme has been complied with. (See Code Civ. Proc., § 2016 et seq.) However, there was no objection by petitioner to this lack of procedural niceties and any defect is therefore waived.

by decedent over a period of years which could be viewed as casting doubt on his mental faculties. With specific regard to the proposed exhumation and autopsy, real parties presented declarations and testimony from expert pathologists. These pathologists stated that, depending on the extent of decomposition at the time of exhumation and the severity of the disorder, it might be possible to determine whether decedent was suffering at the time of death from a condition which would affect his cognitive abilities. From this evidence, again depending on the stage to which the degenerative process had progressed, real parties' experts believed that it might be possible to form an opinion as to whether decedent was suffering from the condition when the contested will was executed.

Petitioners, in opposition to issuance of the requested order, introduced declarations and testimony tending to contradict the showing proffered by real parties. However, we need not detail that evidence for purposes of this discussion, since it is our conclusion that regardless of the factual showing made by either party, the lower court was simply without authority, as a matter of law, to issue the challenged order.

After the evidentiary hearings were concluded, the probate court took the matter under submission. On August 4, 1986, it issued an order granting "the requested discovery" and authorizing the autopsy. The court did not articulate any specific legal theory in support of its order. Petitioners then sought relief by way of mandate from this court, and requested a stay of the disinterment and autopsy pending our review. We issued the stay, and shall grant the writ.

I

Before turning to the merits of the issue before us, we dispose of two preliminary points. First, we acknowledge and indeed have frequently applied the principle that review of discovery orders by way of extraordinary writ is not favored, and is generally granted only where the order threatens to infringe upon a privilege, or where the case involves significant issues. (See *Sav-On Drugs, Inc.* v. *Superior Court* (1975) 15 Cal.3d 1, 4 [123 Cal.Rptr. 283, 538 P.2d 739].) We believe this case falls within the latter class. In light of the especially sensitive nature of the interests affected by the lower court's order, and because the issue appears to be one not previously decided in a reported decision by the courts of this state, an exception to the rule of nonreview is warranted here.

Second, we deny real parties' motion to strike the petition on various technical grounds. Any material omissions from the record have been cured by supplemental filings during the pendency of this proceeding, and we are

satisfied that we have an adequate record upon which to review the lower court's order. (Cf. *Lemelle* v. *Superior Court* (1978) 77 Cal.App.3d 148, 156 [143 Cal.Rptr. 450].) Nor do we find merit in the claim that petitioners have improperly made arguments in this court not raised below. No new factual matters are presented, and the only points made here not voiced below are strictly legal in nature. ■ We have the discretion to consider new legal arguments not previously made and shall do so here. (Cf. *Panopulos* v. *Maderis* (1956) 47 Cal.2d 337, 341 [303 P.2d 738]; 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 323, pp. 333-344.) Furthermore, the principle ground of our decision, the trial court's lack of authority as a matter of law to authorize the autopsy, was argued below, albeit without as extensive a discussion of the authorities as has been provided us. Finally, inclusion in the exhibits to the petition of records from a prior motion raising the same issue, while they may be surplusage, is not grounds for striking the petition in its entirety.

## II

We now turn our attention to the substantive problem at hand. No California statute or decisional precedent directly confers upon the lower court in a civil proceeding the power to authorize or direct the disinterment or autopsy of human remains for the purpose of discovery. While there are several provisions in the laws of this state permitting autopsies, none of them is applicable here.

The primary enactments governing the disposition and control of dead bodies are to be found in Division 7 (§ 7000 et seq.) of the Health and Safety Code. Of particular significance to this case are sections 7100 and 7113. The former grants the "right to control the disposition of the remains of a deceased person" to, in descending order, the spouse, the surviving children, the parents, the next of kin under the laws of succession, or the public administrator. Section 7113, in conjunction with section 7114, prohibits the performance of an autopsy unless authorized by one of the above specified persons, a coroner, or the will of the decedent. While these statutes do not create a property right "as such" in the body, they do recognize the existence of a "*quasi* property right . . . for the limited purpose of determining who shall have its custody for burial." (*Cohen* v. *Groman Mortuary, Inc.* (1964) 231 Cal.App.2d 1, 4 [41 Cal.Rptr. 481]; italics in original.)

In addition to these Health and Safety Code provisions, the coroner is required to inquire into deaths when any of a variety of circumstances are present or suspected, and may, as a part of that inquiry, exhume a body

and conduct an autopsy. (Gov. Code, §§ 27491, 27491.4.) No such inquiry has been undertaken in the present case.

Another statutory grant of power to authorize autopsies is found in the Workers' Compensation Act, which permits judges in a proceeding brought under it to order an autopsy in cases where death benefits are sought and the cause of death is disputed. (Lab. Code, § 5706.) However, this power is circumscribed by Labor Code section 5707, which bestows upon the decedent's survivors an unqualified veto over the autopsy, at the cost of being subjected to a rebuttable presumption against the right to benefits.

The only other statute we are aware of dealing with the subject of autopsies is Insurance Code section 10350.10, which requires that disability insurance policies contain a provision allowing the insurer to demand an autopsy in the case of the insured's demise.

 Obviously, none of these enactments is of aid to real parties in interest here. Indeed, that the Legislature has adopted measures specifying who may authorize autopsies, and in what circumstances, argues against real parties position. The absence of a similar statute applicable to the present circumstances can only be taken as an indication that no such authority exists, and the fact that explicit confirmation of the power in specific circumstances was deemed necessary belies real parties' claim, which we discuss below, that the challenged order derives from some un-codified "inherent" authority vested in judges.

Nor is there any precedent in California case law for the superior court's order. There are, it is true, statements in a few criminal decisions implying that defendants may have a right to conduct an independent examination of a body. In *People* v. *Vick* (1970) 11 Cal.App.3d 1058, at page 1066 [90 Cal.Rptr. 236], the court pointed out that "[a] trial court has the discretion to allow discovery by a criminal defendant, including the examination of a body in some circumstances." However, that general statement carries no weight in the present context. Criminal discovery in California is a product of the common law, as interpreted by the courts, whereas civil discovery since 1957 has been governed by the statutory provisions contained in Code of Civil Procedure section 2016 et seq. and other particular enactments. (*Pitchess* v. *Superior Court* (1974) 11 Cal.3d 531, 535-536 [113 Cal.Rptr. 897, 522 P.2d 305].) Discovery in criminal cases is not bound by the "formalities" of the civil statutes and may in fact encompass a broader range of disclosure because of the need to guarantee defendants a fair trial as a matter of constitutional due process. (*Ibid.*) Thus, a trial court's dis-cretionary power is greater, and the demands on the defendant to show good cause or need for the requested evidence is diminished in criminal as com-

pared to civil proceedings. Furthermore, we note that the quoted statement in *Vick* came in the context of an opinion rejecting a defense argument that the coroner should have preserved the body of a murder victim to enable the defendant to conduct an independent examination. The right claimed there was merely to participate in, or continue, a lawful coroner's autopsy of a body which had not yet been interred. (See also *People* v. *McNeill* (1980) 112 Cal.App.3d 330, 338 [169 Cal.Rptr. 313].) In *Schindler* v. *Superior Court* (1958) 161 Cal.App.2d 513 [327 P.2d 68], the defendant sought leave to exhume and conduct an autopsy on the body of a dead child. (*Id.*, at p. 516.) That request was one of several, and the *Schindler* court, while it discussed and granted some of the discovery demands (including one to inspect and examine specimens and samples taken at a prior autopsy), denied without discussion the request for leave to exhume and examine the remains. (*Id.*, at p. 521.) The court's silence can only be viewed as a rejection of that specific request.

Despite this absence of directly pertinent authority, real parties proffer two theories in support of their position. First, they contend that the courts of this state have "inherent" authority to order discovery, citing *Johnston* v. *Southern Pacific Co.* (1907) 150 Cal. 535, 540 [89 P. 348], and *Dodge* v. *San Diego Electric Ry. Co.* (1949) 92 Cal.App.2d 759, 769 [208 P.2d 37]. However, the cited decisions antedate the 1957 adoption of the Code of Civil Procedure provisions controlling discovery, and were rendered at a time when civil discovery, like criminal discovery now, was a matter of common law. More recent cases have made it clear that the courts are without power to expand the methods of civil discovery beyond those authorized by statute. (See *Edmiston* v. *Superior Court* (1978) 22 Cal.3d 699, 704 [150 Cal.Rptr. 276, 586 P.2d 590]; *Bailey* v. *Superior Court* (1977) 19 Cal.3d 970, 978 [140 Cal.Rptr. 669, 568 P.2d 394]; *Volkswagenwerk Aktiengesellschaft* v. *Superior Court* (1981) 123 Cal.App.3d 840, 849 [176 Cal.Rptr. 874].) We construe these latter authorities as meaning that in the area of civil discovery, the judiciary has no power to create or sanction types or methods of discovery not based on a reasonable interpretation of statutory provisions.

■ As an alternative to this "inherent authority" theory, real parties contend that the requested autopsy is permitted by either Code of Civil Procedure section 2031 or 2032. We do not agree. First, section 2031 provides for the production and inspection of "objects or tangible things." We think it unreasonable to interpret this language as encompassing human remains. As pointed out in *People* v. *Vick, supra,* 11 Cal.App.3d at page 1064: "There is a clear distinction between examination of physical evidence such as handwriting exemplars, fingerprints, written statements, and the body of a human being. The former are susceptible of examination without

the likelihood of outrage to the emotional feelings of the living. As reflected in our laws, our society extends more respect to a dead body than to other physical evidence."[2] Given the extremely sensitive nature of the interests which are infringed when the remains of the dead are disturbed, we are reluctant in the absence of legislative guidance to extend the meaning of the phrase "objects or tangible things" to include interred human bodies.

■ Equally unpersuasive is real parties' argument that an exhumation and autopsy may be ordered pursuant to Code of Civil Procedure section 2032, which permits the trial court to compel a party, or a "person" under the legal control of a party, to submit to a physical or mental examination. Real parties cite no authority to support their novel interpretation of the words "party" or "person" to include the remains of a deceased person. We must construe those words in their ordinary and common sense meaning (*Rockwell* v. *Superior Court* (1976) 18 Cal.3d 420, 442 [134 Cal.Rptr. 650, 556 P.2d 1101]), and doing so we can only conclude that the Legislature, in enacting section 2032, contemplated its application to requests for examinations of *living* persons. Furthermore, we see no way the express terms of the statute, even if liberally construed, could be found to encompass the body of decedent. The corpse is obviously not a "party" to the probate court action, nor can it be considered a "person."

■ Decisions from other jurisdictions cited by real parties as authority for the court-ordered autopsy do not convince us that we should alter our conclusion. The cases cited are either criminal (*State* v. *Wood* (1928) 127 Me. 197 [142 A. 728]) and thus, as we have previously noted, bring into play considerations not present in this civil action, or they rely upon a "common law" or "inherent" power of courts in civil proceedings. (*Kusky* v. *Laderbush* (1950) 96 N.H. 286 [74 A.2d 546]; *State* ex rel. *Meyer* v. *Clifford* (1914) 78 Wash. 555 [139 P. 650].) However, as we have explained, the courts of this state are governed by a statutory discovery scheme which includes no provision empowering trial judges to direct the disinterment and dissection of human remains for purposes of producing evidence relevant to the issues in a civil proceeding.

We have no doubt the Legislature could, if it chose, allow orders of the type at issue here. Indeed, as we noted at the outset, it has done so in several contexts. But, in the absence of express statutory language, the courts of

---

[2]In advocating the applicability of section 2031, real parties cite *Zalatuka* v. *Metropolitan Life Ins. Co.* (7th Cir. 1939) 108 F.2d 405, which they claim approved a federal trial court's order permitting exhumation and autopsy in a civil case pursuant to Rule 34 of the Federal Rules of Civil Procedure. However, the circuit court in *Zalatuka* disposed of the case on purely procedural grounds, and the propriety of the trial court's order was not addressed. Accordingly, *Zalatuka* is of no benefit to real parties in this case.

this state have no legal authority, inherent or expressly conferred, to disturb the repose of the dead as an aid to civil litigants in their trial preparations.

Having so held, we need not discuss the remaining arguments of the parties, which are chiefly directed to the question of whether "good cause" was demonstrated in support of the autopsy. Regardless of the factual showing, the superior court had no power to issue the challenged order.

The parties have been advised we were considering the issuance of a peremptory writ of mandate in the first instance, and were afforded an opportunity to oppose such action. We may therefore dispense with an alternative writ and render our decision forthwith. (See *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171 [203 Cal.Rptr. 626, 681 P.2d 893].) Let a peremptory writ of mandate issue directing respondent superior court to vacate its order of August 4, 1986, granting real parties' application for authorization to exhume and perform an autopsy on the body of decedent Edwin Robert Maleville, and to enter a new order denying that application.

The motion to strike the petition is denied.

Regan, J., and Blease, J., concurred.

The petition of real parties in interest for review by the Supreme Court was denied March 4, 1987.