[Civ. No. 21071. Fourth Dist., Div. Two. Apr. 3, 1980.]

CARL D. ALLEN, Plaintiff and Appellant, v.
NICHOLAS JONES et al., Defendants and Respondents.

[redacted]

## Counsel

James O. Cripps for Plaintiff and Appellant.

Roberts, Harrison & Dougherty and Charles A. Harrison for Defendants and Respondents.

## Opinion

**TAMURA, J.**—Plaintiff sued defendants, individually and as a partnership doing business under the name of Miller Jones Valley Mortuary, to recover damages for mental distress suffered upon learning that the cremated remains of plaintiff's brother, which defendants had undertaken to ship to Illinois, were lost in transit. Plaintiff appeals from a judgment of dismissal following the sustaining of defendants' demurrer to plaintiff's second amended complaint.

The factual allegations of the second amended complaint, which are deemed true for purposes of this review (*Guess v. State of California* (1979) 96 Cal.App.3d 111, 114 [157 Cal.Rptr. 618]), are as follows: Plaintiff is the brother and nearest living relative of Ralph Allen, who died on December 2, 1976. On or about December 4, 1976, plaintiff entered into an oral agreement with defendants under which defendants agreed to cremate the body of Ralph Allen and to ship the cremated remains to Rantoul, Illinois. Plaintiff agreed to pay, and did pay, $516 for defendants' services. As a result of defendants' negligence in packaging the remains, the package arrived empty and the remains were lost, causing plaintiff to suffer great nervous shock, mental anguish and humiliation.

The complaint alleges in general terms that defendants acted wantonly, recklessly, and with a conscious disregard for the safety of the remains of plaintiff's brother, that defendants conducted themselves in an outrageous manner exceeding all bounds usually tolerated by a decent

society and that defendants acted with the intention to cause or with a complete reckless disregard of the probability of causing emotional distress. It is further alleged that when defendants promised to take care to safely ship the remains of plaintiff's brother, defendants had no intention of performing their promise, which was intended to induce and did induce plaintiff to enter into the agreement with defendants.

The second amended complaint was framed in causes of action for negligent performance of a contract, intentional infliction of emotional distress and deceit. In the negligence cause of action, plaintiff sought damages for emotional distress only. In the other two causes of action, plaintiff sought both emotional distress damages and punitive damages. The court below, in the minute order announcing its ruling, stated that the demurrers were sustained on the ground that the complaint failed to plead "recognized damages." The court granted plaintiff leave to amend the complaint but plaintiff, having already twice amended the complaint, chose not to do so.

On this appeal, plaintiff contends that each of the causes of action alleged can be maintained despite the fact that the only compensatory damage alleged and sought is for mental distress and emotional suffering and that, therefore, the demurrer was improperly sustained as to each cause of action. In the ensuing discussion, we have concluded that plaintiff is entitled to maintain the cause of action for negligent performance of the contract but that the allegations of intentional infliction of emotional distress and deceit are too vague and conclusory to state a cause of action on those theories.

I

■ In an action for breach of contract, the measure of damages is "the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom" (Civ. Code, § 3300), provided, however, that the damages are "clearly ascertainable in both their nature and origin" (Civ. Code, § 3301). These statutory provisions have been interpreted by our courts to mean that damages for breach of contract are ordinarily confined to those which would naturally arise from the breach or which might have been reasonably contemplated or foreseen by the parties at the time they contracted, as the probable result of the breach. (*Hunt Bros. Co.* v. *San Lorenzo etc. Co.* (1906) 150 Cal. 51, 56 [87 p. 1093]; *Glendale Fed. Sav. & Loan Assn.* v. *Marina*

*View Heights Dev. Co.* (1977) 66 Cal.App.3d 101, 125 [135 Cal.Rptr. 802].)

■ The great majority of contracts involve commercial transactions in which it is generally not foreseeable that breach will cause significant mental distress as distinguished from mere mental agitation or annoyance. Accordingly, the rule has developed that damages for mental suffering or injury to reputation are generally not recoverable in an action for breach of contract. (See *Westwater* v. *Grace Church* (1903) 140 Cal. 339, 342 [73 P. 1055]; *Sawyer* v. *Bank of America* (1978) 83 Cal. App.3d 135, 139 [145 Cal.Rptr. 623]; *Dryden* v. *Tri-Valley Growers* (1977) 65 Cal.App.3d 990, 999 [135 Cal.Rptr. 720]; *O'Neil* v. *Spillane* (1975) 45 Cal.App.3d 147, 159 [119 Cal.Rptr. 245]; *Fletcher* v. *Western National Life Ins. Co.* (1970) 10 Cal.App.3d 376, 400 [89 Cal. Rptr. 78, 47 A.L.R.3d 286]. See also, *Smith* v. *Alameda County Social Services Agency* (1979) 90 Cal.App.3d 929, 943 [153 Cal.Rptr. 712].)

There are, however, certain contracts which so affect the vital concerns of the individual that severe mental distress is a foreseeable result of breach. For many years, our courts have recognized that damages for mental distress may be recovered for breach of a contract of this nature. (*Crisci* v. *Security Ins. Co.* (1967) 66 Cal.2d 425, 434 [58 Cal. Rptr. 13, 426 P.2d 173]; *Chelini* v. *Nieri* (1948) 32 Cal.2d 480, 482 [196 P.2d 915]; *Windeler* v. *Scheers Jewelers* (1970) 8 Cal.App.3d 844, 851 [88 Cal.Rptr. 39]; *Westervelt* v. *McCullough* (1924) 68 Cal.App. 198, 208-209 [228 P. 734].)

A contract whereby a mortician agrees to prepare a body for burial is one in which it is reasonably foreseeable that breach may cause mental anguish to the decedent's bereaved relations. "One who prepares a human body for burial and conducts a funeral usually deals with the living in their most difficult and delicate moments. . . . The exhibition of callousness or indifference, the offer of insult and indignity, can, of course, inflict no injury on the dead, but they can visit agony akin to torture on the living. So true is this that the chief asset of a mortician and the most conspicuous element of his advertisement is his consideration for the afflicted. A decent respect for their feelings is implied in every contract for his services." (*Fitzsimmons* v. *Olinger Mortuary Ass'n.* (1932) 91 Colo. 544 [17 P.2d 535, 536-537].) In a similar vein, another court has stated: "The tenderest feelings of the human heart center around the remains of the dead. When the defendants contracted with plaintiff to inter the body of her deceased husband in a workmanlike manner

they did so with the knowledge that she was the widow and would naturally and probably suffer mental anguish if they failed to fulfil their contractual obligation in the manner here charged. The contract was predominantly personal in nature and no substantial pecuniary loss would follow its breach. Her mental concern, her sensibilities, and her solicitude were the prime considerations for the contract, and the contract itself was such as to put the defendants on notice that a failure on their part to inter the body properly would probably produce mental suffering on her part. It cannot be said, therefore, that such damages were not within the contemplation of the parties at the time the contract was made." (*Lamm v. Shingleton* (1949) 231 N.C. 10 [55 S.E.2d 810, 813-814].)

The first California case to permit recovery of mental distress damages in a contract action, though it did not concern a contract for services of a mortician, relied on a decision from another state involving facts similar to the present case. (*Westervelt v. McCullough, supra*, 68 Cal.App. 198, 207.) In the cited case, an undertaker agreed to keep a child's body in a vault pending arrangements for its burial. By mistake, the body was removed from the vault, shipped to another city, and buried. The parents sued the undertaker and recovered damages for mental distress. On appeal, the court stated: "When the appellants contracted with the appellees to safely keep the body of their daughter until such time as they should desire to inter the same, they did so with a knowledge of the fact that a failure on their part to comply with the terms of such contract would result in injury to the feelings of the appellees, and they must, therefore, be held to have contracted with reference to damages of that character, in the event of a breach of the contract on their part." (*Renihan v. Wright* (1890) 125 Ind. 536 [25 N.E. 822, 826].)

The leading case on the same subject in this state is *Chelini v. Nieri, supra*, 32 Cal.2d 480, in which the plaintiff recovered $10,000 general damages for a mortician's breach of a contract to preserve the body of the plaintiff's mother. The only significant distinction between *Chelini* and the instant case is that in *Chelini* the plaintiff's emotional suffering was manifested in physical illness, whereas in the present case plaintiff has alleged only mental distress.

To date all of the cases in this state in which mental distress damages have been awarded for breach of contract have been cases in which the

mental distress caused physical illness, and it is not clear whether mental distress damages alone can ever support an action for breach of contract in this state.[1] We need not address that question in the present case, however, because plaintiff alleged that the cremated remains were lost because of defendants' negligence in preparing them for shipment. Plaintiff has thereby pleaded an action in tort as well as in contract. (*Crisci v. Security Ins. Co., supra,* 66 Cal.2d 425, 432; *Eads v. Marks* (1952) 39 Cal.2d 807, 811 [249 P.2d 257]; *Jarchow v. Transamerica Title Ins. Co.* (1975) 48 Cal.App.3d 917, 939-940 [122 Cal.Rptr. 470]; Prosser, Law of Torts (4th ed. 1971) pp. 617-618.)

In tort actions courts have traditionally been reluctant to allow recovery for mental distress not accompanied by physical injury. However, as Prosser states: "It is now more or less generally conceded that the only valid objection against recovery for mental injury is the danger of vexatious suits and fictitious claims, which has loomed very large in the opinions as an obstacle." (Prosser, Law of Torts (4th ed. 1971) p. 328, fns. omitted.) Prosser observes that the majority of jurisdictions now permit recovery for negligent mishandling of corpses, and explains that this particular situation presents "an especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious." (*Ibid.,* at p. 330. See also, Leavitt, *The Funeral Director's Liability for Mental Anguish* (1964) 15 Hastings L.J. 464, 482-494.)

Section 868 of the Restatement Second of Torts recognizes a cause of action for intentional, reckless, or negligent conduct which prevents proper interment of a dead body.[2] The official comment to the section

---

[1]Of the few California cases in which damages have been sought against a mortician for breach of contract, two involved physical illness and recovery was permitted (*Chelini v. Nieri, supra,* 32 Cal.2d 480; *Carey v. Lima, Salmon & Tully Mortuary* (1959) 168 Cal.App.2d 42 [335 P.2d 181]), and in the other recovery was denied on the ground that the parties bringing the action were not parties to the contract (*Cohen v. Groman Mortuary, Inc.* (1964) 231 Cal.App.2d 1 [41 Cal.Rptr. 481]). In a case also worthy of note, a cross-complaint was filed by the decedent's child against the decedent's father for tortious interference with the child's paramount right to make funeral arrangements for the decedent, but the court found the cross-complaint defective in failing to specifically allege the tortious conduct and in failing to allege either mental or physical injury. (*Sinai Temple v. Kaplan* (1976) 54 Cal.App.3d 1103 [127 Cal.Rptr. 80].)

[2]Section 868 provides: "One who intentionally, recklessly, or negligently removes, withholds, mutilates or operates upon the body of a dead person or prevents its proper interment or cremation is subject to liability to a member of the family of the deceased who is entitled to the disposition of the body."

states: "The technical basis of the cause of action is the interference with the exclusive right of control of the body, which frequently has been called by the courts a 'property' or a 'quasi-property' right. This does not, however, fit very well into the category of property, since the body ordinarily cannot be sold or transferred, has no utility and can be used only for the one purpose of interment or cremation. In practice the technical right has served as a mere peg upon which to hang damages for the mental distress inflicted upon the survivor; and in reality the cause of action has been exclusively one for the mental distress.... There is no need to show physical consequences of the mental distress."

The modern rule is well illustrated by the case of *Lott* v. *State* (1962) 32 Misc.2d 296 [225 N.Y.S.2d 434]. Mrs. Lott and Mrs. Tumminelli, patients at the same state hospital, died at about the same hour. Through the hospital's negligence, the body of Mrs. Lott was given to the undertaker for the Tumminelli family and prepared for burial in accordance with the customs and practices of the Roman Catholic faith, while the body of Mrs. Tumminelli was given to the Lott's undertaker and prepared for burial in accordance with the Jewish faith. The surviving relatives of both decedents brought an action against the state for mental distress suffered upon learning of the mistake. Awarding damages, the court held: "The temporary deprivation of the right to the bodies of Rose Lott and Mary Tumminelli for burial, the unauthorized embalming of the body of Rose Lott and the resultant mental suffering of the claimants as next of kin are wrongs for which the defendant is liable." (*Lott* v. *State, supra*, 32 Misc.2d 296 [225 N.Y.S.2d 434, 437]. See also, *Brown Funeral Homes & Ins. Co.* v. *Baughn* (1933) 226 Ala. 661 [148 So. 154]; *Meyer* v. *Nottger* (Iowa 1976) 241 N.W.2d 911; *Lamm* v. *Shingleton, supra*, 231 N.C. 10 [55 S.E.2d 810]; *Sanford* v. *Ware* (1950) 191 Va. 43 [60 S.E.2d 10].)

■ We conclude that damages are recoverable for mental distress without physical injury for negligent mishandling of a corpse by a mortuary. Public policy requires that mortuaries adhere to a high standard of care in view of the psychological devastation likely to result from any mistake which upsets the expectations of the decedent's bereaved family. As mental distress is a highly foreseeable result of such conduct and in most cases the only form of damage likely to ensue, recovery for mental distress is a useful and necessary means to maintain the standards of the profession and is the only way in which the victims may be compensated for the wrongs they have suffered. The nature of the wrongful conduct that must be present in this type of case provides suf-

ficient assurance of the genuineness of a claim for emotional distress. As to this form of negligence action, therefore, we hold that plaintiff may recover for mental distress without accompanying physical injury.

It is neither necessary nor appropriate for us in this case to take that giant leap for mankind espoused by the concurring opinion. We need only take the modest step, consistent with common law tradition, of declaring the law applicable to the case at hand. Our decision today hopefully clarifies California law on liability for negligent mishandling of corpses by bringing it into conformity with the views expressed by Professor Prosser, the Restatement and modern decisions from sister states.

## II

█ Mental suffering alone will support an action for extreme and outrageous invasion of the plaintiff's mental and emotional tranquility. (*Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 498 [86 Cal.Rptr. 88, 468 P.2d 216]; *State Rubbish etc. Assn.* v. *Siliznoff* (1952) 38 Cal.2d 330, 337-338 [240 P.2d 282].) Likewise, there is authority for the proposition that mental distress damages may be recovered in an action for deceit. (*Schroeder* v. *Auto Driveaway Co.* (1974) 11 Cal.3d 908, 921 [114 Cal.Rptr. 622, 523 P.2d 662]. See also, *Murphy* v. *Allstate Ins. Co.* (1978) 83 Cal.App.3d 38, 51 [147 Cal. Rptr. 565].) However, allegations of intentional wrongdoing must be specific and will be closely scrutinized. "Notwithstanding relaxed pleading criteria, certain tortious injuries demand firm allegations. Vague, conclusory allegations of fraud or falsity may not be rescued by the rule of liberal construction." (*G.D. Searle & Co.* v. *Superior Court* (1975) 49 Cal.App.3d 22, 29 [122 Cal.Rptr. 218].)

We have carefully examined plaintiff's allegations of deceit and outrageous conduct and find them to be too vague and conclusory; it is evident that the true and sole basis of plaintiff's action is negligent breach of an agreement. █ Although the court below did not allude to this problem in sustaining the demurrer, the ruling must be affirmed on appeal if any of the grounds stated in the demurrer is well taken. (*E. L. White, Inc.* v. *City of Huntington Beach* (1978) 21 Cal.3d 497, 504 [146 Cal.Rptr. 614, 579 P.2d 505].)

We conclude that the court below erred in sustaining the demurrer to the cause of action for negligent breach of contract, but we conclude

also that the ruling was correct as to plaintiff's other causes of action. It follows, of course, that plaintiff may not recover punitive damages. (See *Walker* v. *Signal Companies, Inc.* (1978) 84 Cal.App.3d 982, 996 [149 Cal.Rptr. 119].)

The judgment of dismissal is reversed with directions to overrule defendants' demurrer to plaintiff's first cause of action.

Kaufman, J., concurred.

**GARDNER, P. J.**—I concur.

While I am not terribly enthusiastic about the distinction made in this case between dead bodies and live ones, I join in this opinion because it is a step, albeit a short step, in the direction of breaking down the artificial distinction between emotional distress accompanied by physical manifestation and such discomfort without that handy little gadget.

In no other area are the vagaries of our law more apparent than in the distinction between mental and emotional distress accompanied by physical manifestation and such discomfort unaccompanied by physical manifestation. Generally speaking, a plaintiff in a negligent action may not recover for mental distress without accompanying physical injury or illness. However, given the foundational physical injury or illness, one may then recover not only for physical pain and suffering but for "fright, nervousness, grief, anxiety, worry, mortification, shock, humiliation, indignity, embarrassment, apprehension, terror or ordeal." (*Capelouto* v. *Kaiser Foundation Hospitals* (1972) 7 Cal.3d 889, 892-893 [103 Cal.Rptr. 856, 500 P.2d 880].) On the other hand, except for intentional or outrageous conduct (or special exceptions such as involved in this case and the situation involved in *Jarchow* v. *Transamerica Title Ins. Co.* (1975) 48 Cal.App.3d 917 [122 Cal.Rptr. 470]) such recovery is not allowed absent physical injury or illness. Why the distinction? My mental anguish is the same accompanied or unaccompanied by physical manifestation. If as a result of someone's negligent conduct, I suffer the horrors of gut-wrenching, sleepless nights worrying about the well being of myself, my wife and my children, I should be allowed to recover without having to dream up some foundational physical ailment. If I throw up as a result of my emotional distress, I can recover. However, if I am blessed with a strong stomach, then no matter how acute my mental anguish may be, I cannot recover. This

distinction is not only gossamer, it is whimsical. Nevertheless, it is firmly embedded in our law and from my place in the judicial pecking order, I can do nothing but grumble about it.

I would like to see the Supreme Court do away with this needless distinction. I think the charges of "vexatious suits and fictitious claims" mentioned by Prosser is illusory. I have difficulty accepting the concept of widespread abuse in allowing a person to recover for emotional distress when, at the present, we allow recovery for those who testify to such completely subjective "physical manifestations" as aches or pains. We are always going to have phony lawsuits. I doubt that doing away with this hair-splitting distinction is going to flood the courts with a new class of litigation and the rule I suggest would be a lot more honest than the present rule. If the law can handle purely mental and emotional distress in cases involving intentional or outrageous acts or the negligent mishandling of a corpse, it can do so in ordinary negligence actions.

This is not the first time this court has attempted to face the realities of mental distress without accompanying physical manifestation. In *Jarchow* v. *Transamerica Title Ins. Co., supra*, 48 Cal.App.3d 917, this court held that the negligent infliction of emotional distress was actionable in the case of the refusal of a title company to clear a title. However, a more traditional court in *Quezada* v. *Hart* (1977) 67 Cal. App.3d 754 [136 Cal.Rptr. 815], took us to task for purporting to extend the doctrine of recovery for emotional distress in negligence actions without bad faith or physical injury and said that the ruling was "unwarranted by California law."

I would like to see the Supreme Court take a sharp knife and cut this whole cockamamie distinction out of the law. Then we could avoid such pure sophistry as that found in *Fuentes* v. *Perez* (1977) 66 Cal.App.3d 163, 168-172 [136 Cal.Rptr. 275], which purports to draw a distinction between "the physiological, rather than the psychological, branch of the human organism" and distinguish between the "suffering of the body and the mind." We could also jettison BAJI No. 12.80 which makes the current distinction between recovery for "shock to the nervous system" and "damages for emotional distress unaccompanied by physical injury." For too many years I cringed when reading such an instruction to the jury. Somehow it always conjured up a ghoulish vision of jurors surgically severing the brain from the rest of the body in an attempt to

apply that rule. It seems to me that the law should drag itself into the 20th century and face up to the fact that mental anguish standing by itself is as real as such anguish accompanied by some kind of a physical manifestation.