[No. F010595. Fifth Dist. Aug. 28, 1989.]

FRANCES QUESADA et al., Plaintiffs and Appellants, v.
OAK HILL IMPROVEMENT COMPANY et al., Defendants and
Respondents.

[Opinion certified for partial publication.*]

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part I.

COUNSEL

James S. Feliciano and George L. Alonso, Jr., for Plaintiffs and Appellants.

Van Loucks & Hanley, Michael K. Budra, Geoffrey Van Loucks, Rankin, Oneal, Center, Luckhardt & Lund, Michael C. Serverian and Barbara J. Frischholz for Defendants and Respondents.

OPINION

ARDAIZ, J.—On December 29, 1980, appellants Frances Quesada and Judy Chagoya, along with two others, filed suit against respondents Oak Hill Improvement Company, doing business as Oak Hill Memorial Park and Mortuary (Oak Hill), and the County of Santa Clara (County) claiming damages for emotional distress stemming from respondents' mishandling of a corpse. Approximately one month later respondents demurred on the basis of failure to state a cause of action. The trial court overruled the demurrer and denied a motion for reconsideration. The second cause of action claiming the intentional infliction of emotional distress was dismissed with prejudice on January 12, 1982.[1]

Respondents, on the first day of trial and before a different trial judge, brought a motion for judgment on the pleadings. The grounds for the motion were identical to those for the demurrer. The court granted the motion, giving appellants limited leave to file an amended complaint for the purpose of attempting to state a cause of action for negligent misrepresentation.

On April 17, 1985, appellants filed their first amended complaint, claiming a cause of action for negligent misrepresentation. At the end of April the respondents filed demurrers. On May 3, 1985, appellants also filed a notice of appeal on the granting of the motion for judgment on the pleadings. This appeal was dismissed on September 8, 1986, by the Sixth District Court of Appeal as the appeal was based on a nonappealable order.

On November 3, 1986, the trial court sustained the County's demurrer without leave to amend and sustained Oak Hill's demurrer with leave to amend. Appellants filed a second amended complaint against Oak Hill. On

---

[1] The record does not elucidate the reasons behind the dismissal of this second claim. Citation by respondents Oak Hill in their respondents' brief suggests that it was dismissed in return for respondents' foregoing pursuit of a writ to challenge the overruling of the respondents' demurrers.

December 18, 1986, the order sustaining Oak Hill's demurrer without leave to amend was filed.

Further, on December 18, the court ordered the case dismissed with prejudice. This judgment of dismissal encompassed all the pleadings, both the original pleadings excluded by reason of the granting of the motion for the judgment on the pleadings and those rejected by the court in its sustaining of the demurrers on the first and second amended complaints. Appellants, in their timely appeal, assail the propriety of this judgment of dismissal only insofar as they claim to have stated adequate facts in the original complaint entitling them to seek recovery for respondents' negligent handling of the body of Lupe Quesada. Both Oak Hill and the County respond.

Appellants' appeal, filed in the Sixth Appellate District, was transferred to this district in June of 1988.

We are called upon to decide whether a sister and niece of a deceased, who did not contract for funeral services, may pursue a cause of action against the County and a funeral home for the negligent handling of the corpse, such negligent conduct resulting in emotional distress. We conclude they are not precluded and reverse.

### FACTS

The following statement of the facts comes from the allegations in the several complaints filed.

Ms. Quesada and Ms. Chagoya were the sister and niece of Lupe Quesada. Lupe Quesada died on December 9, 1979. His body was taken by the Santa Clara County Coroner's Office for purposes of performing an autopsy. Sometime on or before December 11, 1979, possession of his body was to have been transferred from the County to Oak Hill Memorial Park pursuant to burial arrangements made by his widow Haydee Quesada.[2]

The initial pleadings noted that respondents "negligently, carelessly and recklessly maintained, handled, managed, operated, delivered and prepared the body of Lupe L. Quesada as to bury the body of another man in place of the body of Lupe L. Quesada and prevent his proper interment." The subsequently amended complaint for negligent misrepresentation alleged that the respondents "had knowledge, both actual and constructive, that the

---

[2] The widow also filed a separate claim against respondents. Respondents settled with the widow.

body that was represented to plaintiffs to be that of Lupe Quesada was not the body of Lupe Quesada." While it is not specifically contained in the pleadings, we glean from the record that appellants allege factually that County delivered a body to Oak Hill represented as Lupe Quesada when the toe tag specifically identified it as the remains of someone other than Lupe Quesada.

On December 11, 1979, appellants, along with the widow and other family members, went to Oak Hill expecting to see the body of Lupe Quesada. Instead, the body of a stranger was shown to them. When appellants and others informed Oak Hill that the body was not that of the deceased, Oak Hill refused to believe them and "ridiculed and mocked" the appellants. Oak Hill conducted or continued to conduct the burial ceremony with the stranger's body and buried the stranger in Lupe Quesada's stead.

When the County was contacted, it, too, refused to believe appellants. Five days later the County admitted the mix-up to the widow. Oak Hill exhumed the body of the stranger and buried the body of Lupe Quesada in its proper place.

As a result of respondents' behavior appellants claim to have suffered great emotional disturbance and shock and injury to their nervous systems.

## I

*Whether Appellants Are Precluded From Pursuing This Appeal, Having Chosen to Amend Their Complaint After the Granting of the Motion for Judgment on the Pleadings.* *

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

## II

*Whether Appellants Can State a Cause of Action for the Negligent Mishandling of a Corpse.*

■ We must determine whether, under the facts as pleaded, appellants can state a cause of action for the negligent mishandling of a corpse as to County and Oak Hills.

■ "A motion for a judgment on the pleadings serves the same function as a general demurrer, i.e., the motion will be granted only if the pleadings,

---

*See footnote, *ante,* page 596.

although uncertain or otherwise defective in form, fail to state a cause of action. [Citations.] In reviewing an order granting a motion for judgment on the pleadings, we accept as true all material allegations in plaintiff's complaint. [Citations.] The underlying merit of these allegations is, of course, ultimately subject to proof by competent and convincing evidence." (*Stockton Newspapers, Inc.* v. *Redevelopment Agency* (1985) 171 Cal.App.3d 95, 99 [214 Cal.Rptr. 561].)

█ Respondents' main contention below, accepted by the trial court, was that appellants, as sister and niece of the deceased, were barred from recovery as they neither were parties to the contract with the funeral home nor did they have the duty, under Health and Safety Code section 7100, to dispose of the deceased's body. The trial court accepted respondents' assertion that absent a contractual relationship or a statutory duty for the disposal of the body, respondents had no duty to appellants. Just as they do here, respondents below depended primarily upon the case of *Cohen* v. *Groman Mortuary, Inc.* (1964) 231 Cal.App.2d 1 [41 Cal.Rptr. 481].

In *Cohen,* the brother and sister, along with other relatives of the deceased, sought recovery against a mortuary which substituted the body of another for their sister at her funeral. The plaintiffs claimed injury by way of shock and mental anguish. Defendant's motion for judgment on the pleadings was granted as to all plaintiffs except for the widower and another brother who had contracted to pay the funeral expenses. The brother and sister appealed. The appellate court affirmed.

First, the court found plaintiffs' claim could not sound in contract, neither person alleging a contract with the defendant nor facts from which the court could infer a contract. (231 Cal.App.2d at pp. 3-4.) Second, the court rejected a tort basis for their claims. The court noted that absent a duty of care owed by the mortuary to the plaintiffs, it could not be liable to plaintiffs for its negligence. "Thus, under the pleadings at bar, did defendants owe appellants a legal duty relative to the conduct of their sister's funeral; what were appellants' rights in this connection?" (*Id.* at p. 4.)

The court initially rejected any duty on defendants' part as the plaintiffs had no legal right or duty to dispose of the deceased's remains. (*Cohen, supra,* 231 Cal.App.2d at p. 5.) The court then discussed *Amaya* v. *Home Ice, Fuel & Supply Co.* (1963) 59 Cal.2d 295 [29 Cal.Rptr. 33, 379 P.2d 513]. In *Amaya* the California Supreme Court affirmed the judgment against a plaintiff-mother's claim for mental injury upon watching the defendant injure her child, finding no duty on the defendants' part. The *Cohen* panel found no pleadings relative to the defendant's violation of rights of any third party. "At most, their claim is for violation of a right to be free

from shock and mental anguish—in the absence of the exercise of any legal duty toward them; but we know of no California case which, under these circumstances, declares such right to be legally protected." (*Cohen, supra,* 231 Cal.App.2d at p. 6.) The court continued that the considerations which prevented the *Amaya* court from imposing liability (administrative problems; proof of injury; setting limits on liability; socioeconomic and moral factors) "prevent us from creating a liability in this case." (*Id.* at p. 7.)

The *Cohen* court continued on and distinguished an Alabama case wherein a sister of the deceased was allowed standing to sue a carrier over the negligent handling of her brother's corpse. It appears from the case that the sister was the next of kin responsible for burial. (231 Cal.App.2d at p. 7.) The court also distinguished *Chelini* v. *Nieri* (1948) 32 Cal.2d 480 [196 P.2d 915] in which the California Supreme Court upheld the award of damages to a son for the mortuary's breach of contract, but struck down the award of exemplary damages. (*Cohen, supra,* 231 Cal.App.2d at p. 8.) Finally, the *Cohen* court noted no basis for the prayer for punitive damages; they were not available on a contract action and no intentional tort was pleaded. (*Id.* at pp. 8-9.)

Besides the *Cohen* case respondents cite two other cases. In *Allen* v. *Jones* (1980) 104 Cal.App.3d 207 [163 Cal.Rptr. 445], the plaintiff brother was the nearest living relative of the deceased. He entered into an oral contract for the cremation and shipping of the remains to Illinois. The package arrived empty, the loss of the remains causing plaintiff mental distress. (*Id.* at p. 209.) The appellate court found the trial court improperly sustained the demurrer as to a cause of action in contract against the defendant. The court found the facts as pleaded supported causes of action in contract or negligence and plaintiff properly pleaded entitlement to recover for his mental anguish even though he had no accompanying physical symptoms. (*Id.* at pp. 214-215.)

In *Sinai Temple* v. *Kaplan* (1976) 54 Cal.App.3d 1103 [127 Cal.Rptr. 80], the plaintiff sued the father and estate of the deceased for funeral expenses. In a cross-complaint, the minor daughter of the deceased sued the father (her grandfather) claiming he interfered with her right of disposition of the remains of her father and had made arrangements contrary to the desires and beliefs of the decedent and herself. The appellate court reversed the summary judgment on the plaintiff's cause of action, finding a question of fact as to whether the father voluntarily accepted liablility for the funeral expenses. The court sustained the summary judgment/motion for judgment on the pleadings on the daughter's cause of action, finding no claims of injury. (*Id.* at p. 1113.)

Appellants asserted below, and claim on appeal, that the holding in *Cohen,* decided in 1964, is outdated; the proper analysis should be based

upon a foreseeability analysis as engaged in by the California Supreme Court in *Dillon* v. *Legg* (1968) 68 Cal.2d 728 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316]. The court in *Dillon* not only overruled the earlier substantive holding in *Amaya* and allowed a mother to plead a derivative cause of action for negligent infliction of emotional distress, it did so by rejecting as contrived and outmoded the restrictive duty analysis utilized in *Amaya*. (*Id.* at pp. 732-739.) Duty would be determined based upon foreseeable harm. Appellants contend applying this new criterion to determine duty here would yield a finding of potential liability, contrary to *Cohen*. We agree, concluding that in light of current duty analysis *Cohen* is no longer instructive.

Contract analysis aside, the tort involved here, and in *Cohen,* is the negligent mishandling of a corpse. In that the body itself suffers no legally cognizable damage by virtue of a defendant's claimed negligence, the question becomes to whom is the duty owed to abstain from such negligent behavior. The court in *Cohen* looked to *Amaya* in restricting the persons to whom such duty is owed. *Dillon,* rejecting the analysis in *Amaya,* suggests that duty is initially defined by the foreseeability of harm; the defendant owes a duty of care to those persons who could foreseeably be harmed by his negligence.

First, it should be noted that *Cohen* was decided four years prior to *Dillon*. Both *Allen* v. *Jones, supra,* and *Sinai Temple* v. *Kaplan, supra,* were decided after *Dillon* and although each cited *Cohen* with approval, neither court was presented with the issue of whether someone other than a contracting party or next of kin with the statutory obligation/right to bury the deceased could maintain a cause of action against a mortuary or other entity who negligently or improperly cared for or handled the deceased. Therefore, neither case supports the proposition that the holding in *Cohen* relative to this issue has been reviewed in light of modern duty analysis.

Second, we reject respondent County's suggestion that appellants argue the application of *Dillon* substantively; appellants do not seek to state a cause of action for negligent infliction of emotional distress as third party witnesses, derivative from the negligent injury to the deceased by respondents. Appellants clearly do not seek to impose liability on respondents derivatively (see *Dillon* v. *Legg, supra,* 68 Cal.2d at p. 733); they claim here to be the foreseeable direct victims of respondents' negligent handling of the corpse. (See *Ochoa* v. *Superior Court* (1985) 39 Cal.3d 159, 172 [216 Cal.Rptr. 661, 703 P.2d 1]; *Molien* v. *Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916, 923 [167 Cal.Rptr. 831, 616 P.2d 813, 16 A.L.R.4th 518];

*Rodriguez* v. *Bethlehem Steel Corp.* (1974) 12 Cal.3d 382, 401-402 [115 Cal.Rptr. 765, 525 P.2d 669].)[3]

The problem presented both here and in *Cohen* must be reviewed under an analysis of respondents' duty as set forth in *Dillon* v. *Legg* and its progeny, to determine whether respondents owed a duty of care to appellants in the handling of the deceased Lupe Quesada.

In *Dillon* v. *Legg* the court stated: "In the absence of 'overriding policy considerations . . . foreseeability of risk [is] of . . . primary importance in establishing the element of duty.' [Citations.] As a classic opinion states: 'The risk reasonably to be perceived defines the duty to be obeyed.' [Citation.] Defendant owes a duty, in the sense of a potential liability for damages, only with respect to those risks or hazards whose likelihood made the conduct unreasonably dangerous, and hence negligent, in the first instance. [Citations.]" (68 Cal.2d at p. 739.)

Forseeability is to be determined on a case-by-case basis: ". . . Such reasonable foreseeabilty does not turn on whether the particular [defendant] as an individual would have in actuality foreseen the exact accident and loss; it contemplates that courts, on a case-to-case basis, analyzing all the circumstances, will decide what the ordinary man under such circumstances should reasonably have foreseen. The courts thus mark out the areas of liability, excluding the remote and unexpected." (68 Cal.2d at pp. 740-741.)

■ "The defendant owes a duty of care to all persons who are foreseeably endangered by his conduct, with respect to all risks which ' make the conduct unreasonably dangerous. [Citation.] The foreseeable risk need not be of an actual physical impact, but may be of emotional trauma alone." (*Rodriguez* v. *Bethlehem Steel Corp., supra,* 12 Cal.3d at p. 399.)

In a host of different situations the California Supreme Court determined duty based upon foreseeability. In *Rowland* v. *Christian* (1968) 69 Cal.2d

---

[3] It has long been recognized that the mistreatment of a corpse could give rise to tort liability. (See *Chelini* v. *Nieri, supra,* 32 Cal.2d 480; *Draper Mortuary* v. *Superior Court* (1982) 135 Cal.App.3d 533, 537-538 [185 Cal.Rptr. 396]; Prosser, Law of Torts (4th ed. 1971) pp. 329-330; Annot., Civil Liability of Undertaker in Connection with Transportation, Burial, or Safeguarding of Body (1987) 53 A.L.R.4th 360; Annot., Liability in Damages for Withholding Corpse from Relatives (1973) 48 A.L.R.3d 240.) The fact that the expected, and often sole, injury flowing from such tort is that of mental trauma does not transform the cause of action into one for the negligent infliction of emotional distress. (*Allen* v. *Jones, supra,* 104 Cal.App.3d 207, 211-213.) This is not an instance of recovery being based solely on infliction of emotional distress, but rather the respondents' duties toward the close relatives of the deceased to handle the corpse properly. (Compare *Marlene F.* v. *Affiliated Psychiatric Medical Clinic, Inc.* (1989) 48 Cal.3d 583 [257 Cal.Rptr. 98, 770 P.2d 278].)

108, 112-113, 117-118 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496], the court set aside the ancient disparate treatment of licensee, trespasser and invitee in determining a property owners' duty of care. In *Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425, 431, 434 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166], the court held a therapist owed a duty of care to warn a third person threatened by one of his patients. In *Rodriguez* v. *Bethlehem Steel Corp., supra,* 12 Cal.3d 382, 399, the court departed from prior precedent and allowed a wife to state a cause of action for loss of consortium.

■ We conclude that the restrictive analysis of *Cohen* is no longer applicable. Rather, the extent of respondents' duty must be based on the test of foreseeability. The facts before us clearly support a finding of foreseeability of injury to close friends and relatives flowing from respondents' mishandling of the corpse.

County's alleged negligence in giving Oak Hill the wrong body initiated the chain of events; Oak Hill's subsequent insensitivity exacerbated the impact. Regardless of whether County could have reasonably expected Oak Hill to correct its error, the allegation is that Oak Hill did nothing when informed of the error, County did nothing upon being contacted, and both maintained the correctness of the identification in the face of family protest. Without deciding who may be more or less responsible, the basic allegation is that the conduct of both respondents resulted in the wrong body being interred—this, in direct rejection of the family's protestations. The issue before us is whether this alleged negligent conduct creates any liability on the part of the respondents to the decedent's sister and/or niece for their injuries.

Parties charged with the care, custody and control of the remains of a deceased know or reasonably should know that the surviving friends and relatives are emotionally vulnerable. (See *Allen* v. *Jones, supra,* 104 Cal.App.3d 207, 211-212.) Here, the County knew the body was being delivered for burial. Oak Hill supplied a meeting place for—that is, invited—those to whom the deceased was most close and dear. Both respondents easily could foresee that negligently allowing family and friends to view another person's body instead of the deceased's might well cause severe mental trauma to members of the family or friends who had a close relationship with the deceased. (See *Draper Mortuary* v. *Superior Court, supra,* 135 Cal.App.3d 533, 538; *Golston* v. *Lincoln Cemetery, Inc.* (Mo.App. 1978) 573 S.W.2d 700, 709-710.) Concerns about the loss or misplacement of the deceased's body, the failure to provide religious or spiritual rites to the deceased, and improper interment of another would understandably preoccupy those close to the deceased.

We emphasize that unlike an accident where "the negligent driver who causes the death of a young child may reasonably expect that the mother will not be far distant and will upon witnessing the accident suffer emotional trauma" (*Dillon* v. *Legg, supra,* 68 Cal.2d at p. 741), the nature of the funerary ritual makes it not only foreseeable but inevitable that close friends and family members will be present. Indeed, the function of Oak Hill's business is to provide a gathering place for the decedent's family and friends to pay their last respects. While we are mindful that a funeral home reasonably might rely on a representation that the body it received from the County was properly identified, that is not the allegation here. Before us is the accusation that in the face of information that should have given respondents pause for concern, they proceeded with the rites, thoughtless of the consequences.

Moreover, the claims in the second amended complaint relating to respondent Oak Hill's mocking and ridiculing of appellants when appellants protested that respondent had the wrong body makes more foreseeable the injury to such family members. Indeed, the allegation of conduct so insensitive and the further claim that the burial proceeded in the face of explicit protestations, if proven, may take respondent's behavior beyond simple negligence. (See Prosser, Law of Torts, *supra,* at pp. 329-330.)[4]

Having found persons with a close personal relationship with the deceased would foreseeably be injured by the kind of conduct alleged in this case does not end our analysis of the question. (*Elden* v. *Sheldon* (1988) 46 Cal.3d 267, 274 [250 Cal.Rptr. 254, 758 P.2d 582]; *Dillon* v. *Legg, supra,* 68 Cal.2d at p. 739.)

---

[4] Restatement Second of Torts section 868, page 274, states: "One who intentionally, recklessly or negligently removes, withholds, mutilates or operates upon the body of a dead person or prevents its proper interment or cremation is subject to liability to a member of the family of the deceased who is entitled to the disposition of the body."

The caveat and comment on caveat are instructive: "The Institute takes no position on liability to persons other than family members who have an interest in the body."

"g. The decisions in which recovery has been allowed for interference with a dead body have thus far been those in which the plaintiff has been the person entitled to disposition of the body or one of a group, such as children of the deceased, who have equal right of disposition. In the absence of decisions, the Institute expresses no opinion on whether one who is not entitled to the disposition may not, under some circumstances, have a cause of action for his own mental distress under the principle stated in this Section. Under the rule stated in § 46 one who by extreme and outrageous conduct intentionally or recklessly inflicts severe emotional distress upon another is subject to liability for the emotional distress. The outrageous mistreatment of a dead body in the presence of surviving relatives would appear to be a proper case for liability under that Section. But even when the conduct of the defendant is merely negligent, it is difficult to conclude that a widow who has the technical right of disposition of the body but is not present on the scene should be entitled to recover, while a daughter who is present, but has no such right should not."

In a series of relatively recent cases the California Supreme Court has displayed reservations about expanding imposition of liability for intangible injuries such as emotional distress. (See *Thing* v. *La Chusa* (1989) 48 Cal.3d 644, 664 [257 Cal.Rptr. 865, 771 P.2d 814]; *Marlene F.* v. *Affiliated Psychiatric Medical Clinic, Inc., supra,* 48 Cal.3d 583, 589-590; *Elden* v. *Sheldon, supra,* 46 Cal.3d 267, 274; see also *Borer* v. *American Airlines, Inc.* (1977) 19 Cal.3d 441 [138 Cal.Rptr. 302, 563 P.2d 858].) In *Thing* the court strictly construed the guidelines announced in *Dillon* in order to limit liability otherwise possible under a pure foreseeability analysis. In *Marlene F.* the court "clarified" the basis for recovery for direct victims of the negligent infliction of emotional distress. In *Elden* v. *Sheldon* the court rejected allowing cohabitors, that is, putative or de facto spouses, to sue under a derivative *Dillon*-type cause of action while acknowledging the foreseeability of injury to such persons. We see in these diverse cases both the court's discomfort with ever-widening liability for negligent tortfeasors and a search for assurance of damages where the claimed injury is intangible.

In *Thing* v. *La Chusa* the court emphasized that foreseeability alone can create a duty which is out of proportion to defendant's delict.

"It is apparent that reliance on foreseeability of injury alone in finding a duty, and thus a right to recover, is not adequate when the damages sought are for an intangible injury. In order to avoid limitless liability out of all proportion to the degree of a defendant's negligence, and against which it is impossible to insure without imposing unacceptable costs on those among whom the risk is spread, the right to recover for negligently caused emotional distress must be limited.

"We acknowledged and addressed one aspect of this problem in *Elden* v. *Sheldon* (1988) 46 Cal.3d 267 . . . , holding that cohabitation, without formal marriage, did not constitute the close relationship contemplated by the *Dillon* guidelines and that foreseeability of injury alone does not justify imposition of liability for negligently caused emotional distress. In so doing, we again recognized that policy considerations justify restrictions on recovery for emotional distress notwithstanding the sometimes arbitrary result, and that the court has an obligation to establish those restrictions. *Elden* confirmed that those policy considerations include both the burden on the courts in applying vaguely defined criteria and the importance of limiting the scope of liability for negligence. If the consequences of a negligent act are not limited an intolerable burden is placed on society. A 'bright line in this area of the law is essential.' [Citation.]

". . . In so doing, we balance the impact of arbitrary lines which deny recovery to some victims whose injury is very real against that of imposing

liability out of proportion to culpability for negligent acts. We also weigh in the balance the importance to the administration of justice of clear guidelines under which litigants and trial courts may resolve disputes." (*Thing* v. *La Chusa, supra,* 48 Cal.3d at p. 664.)

Therefore, although the court continues to utilize foreseeability to begin a determination of duty, the final determination of duty is tempered by policy considerations. In discussing strict application of the *Dillon* guideline limiting recovery to those closely related to the victim, the *Thing* court stated: "Similar reasoning ['greater certainty and a more reasonable limit on the exposure to liability for negligent conduct'] justifies limiting recovery to persons closely related by blood or marriage since, in common experience, it is more likely that they will suffer a greater degree of emotional distress than a disinterested witness to negligently caused pain and suffering or death. Such limitations are indisputably arbitrary since it is foreseeable that in some cases unrelated persons have a relationship to the victim or are so affected by the traumatic event that they suffer equivalent emotional distress. As we have observed, however, drawing arbitrary lines is unavoidable if we are to limit liability and establish meaningful rules for application by litigants and lower courts.

"No policy supports extension of the right to recover for NIED [negligent infliction of emotional distress] to a larger class of plaintiffs. Emotional distress is an intangible condition experienced by most persons, even absent negligence, at some time during their lives. Close relatives suffer serious, even debilitating, emotional reactions to the injury, death, serious illness, and evident suffering of loved ones. These reactions occur regardless of the cause of the loved one's illness, injury, or death. That relatives will have severe emotional distress is an unavoidable aspect of the 'human condition.' The emotional distress for which monetary damages may be recovered, however, ought not to be that form of acute emotional distress or the transient emotional reaction to the occasional gruesome or horrible incident to which every person may potentially be exposed in an industrial and sometimes violent society. Regardless of the depth of feeling or the resultant physical or mental illness that results from witnessing violent events, persons unrelated to those injured or killed may not now recover for such emotional upheaval even if negligently caused. Close relatives who witness the accidental injury or death of a loved one and suffer emotional trauma may not recover when the loved one's conduct was the cause of that emotional trauma. The overwhelming majority of 'emotional distress' which we endure, therefore, is not compensable." (*Thing* v. *La Chusa, supra,* 48 Cal.3d at pp. 666-667.)

Applying these considerations to the question before us it appears appropriate to limit the class of potential plaintiffs to close family members

in order to avoid expansive liability and to be assured that those claiming damages by way of the negligent handling of a corpse truly suffered serious emotional distress. It is more likely that this group of people will be seriously traumatized by the negligent handling of the corpse than those people not related to the deceased.

The reasoning of the court in *Elden* v. *Sheldon* reinforces the propriety of limiting the class of potential plaintiffs. The court in *Elden* stated three reasons for denying recovery to putative spouses: first, the state has an interest in promoting lawful marriage; second, allowing such a cause of action would require "a court to inquire into the relationship of the partners to determine whether the 'emotional attachment of the family relationship' existed between the parties [citation], and whether the relationship was 'stable and significant' [citation]" (46 Cal.3d at pp. 275-276); and, third, the need to limit the number of persons to whom a negligent respondent owes a duty of care. (*Id.* at pp. 274-277.)

The second and third reasons enunciated by the California Supreme Court in *Elden* also deserve consideration here. Nonrelated plaintiffs would have a very difficult task proving that they enjoyed a close relationship with the deceased such that it was foreseeable that they would be injured by defendant's negligence. We would be required to peer into the depth of the relationship to look for indicia of "family-like" attachment.

Of equal concern in *Elden* is "the need to limit the number of persons to whom a negligent defendant owes a duty of care." (46 Cal.3d at p. 276.) By limiting recovery only to close relatives we necessarily circumscribe the potential class of plaintiffs. We, of course, do not just limit the group for limitation's sake, but rather seek to be assured of the genuineness of the plaintiff's claimed intangible injury.

Whether it is the analysis of *Dillon*—that the individuals (here, the deceased and the bereaved) were "closely related, as contrasted with the absence of any relationship or the presence of only a distant relationship" (*Dillon* v. *Legg, supra,* 68 Cal.2d at p. 741)—or the well-reasoned perceptions of *Elden*—"[t]he temptation to give legal effect to close emotional ties between unrelated or distantly related persons is often strong, for it cannot be denied that in some cases such relationships offer as much affection, support and solace as is provided by immediate family members, and that the emotional trauma suffered as the result of injury to a person in such a relationship may be as devastating as that suffered by a member of the immediate family" (*Elden* v. *Sheldon, supra,* 46 Cal.3d at p. 277)—it is readily observable that the most likely and foreseeable victim is the family member with a close personal relationship to the deceased. While we

recognize the depth of that relationship will raise questions of proof, resolution of such questions of fact can well be resolved by a trier of fact.

In *Thing* v. *La Chusa, supra,* 48 Cal.3d 644, 668, footnote 10, the court limited recovery in *Dillon*-type torts with intangible injury to those closely related to the victim. "Absent exceptional circumstances, recovery should be limited to relatives residing in the same household, or parents, siblings, children, and grandparents of the victim." Ms. Quesada, as the deceased's sister, clearly falls within this definition of close relatives. Ms. Chagoya, the niece of the deceased, does not necessarily fall within this definition. However, neither is she necessarily excluded as a matter of law. As noted in *Thing,* exceptional circumstances as well as residence in the same household may well give substance to her claim.

We must recognize one of the realities of life—that the deceased, usually aged, frequently will leave few, if any, family members of close blood relationship; death may rob us of those naturally closest to us. One cousin may stand at the funeral of another or a niece may sit alone at her aged aunt's funeral. The simple expedient of calculation of the degree of consanguinity in order to assess liabilty is not, of itself, a sufficient basis to reject the niece's claim. Whether the niece can plead and prove her relationship to the decedent was one falling within the category of "exceptional circumstances" remains to be demonstrated. We simply hold that she may not be excluded merely because she is the niece of the decedent.

As a society we want those who are entrusted with the bodies of our dead to exercise the greatest of care. Imposing liability within the limits described will promote that goal. Further, those who come in contact with the bereaved should show the greatest solicitude; it is beyond a simple business relationship—they have assumed a position of special trust toward the family. (See *Draper Mortuary* v. *Superior Court, supra,* 135 Cal.App.3d at p. 538.) Few among us who have felt the sting of death cannot appreciate the grief of those bereaved by the loss. It is neither unreasonable nor unfair to expect the same appreciation by those who prepare our dead.

We conclude the trial court abused its discretion in failing to grant appellants leave to amend their cause action for negligent handling of a corpse when the court granted the motion for judgment on the pleadings. (See *Ross* v. *Forest Lawn Memorial Park* (1984) 153 Cal.App.3d 988, 997 [203 Cal.Rptr. 468, 42 A.L.R.4th 1049].) Appellants should have an opportunity to plead that they fall within the group described above such that it was foreseeable respondents' alleged negligent mishandling of the remains of Lupe Quesada would cause them severe emotional distress.

The trial court improperly granted the motion for judgment on the pleadings as to the cause of action for the negligent mishandling of a corpse. Appellants have not challenged on appeal the propriety of the court's order sustaining the demurrer to their negligent misrepresentation claims. Therefore, the judgment of dismissal, insofar as it is based on the cause of action for mishandling a corpse, is reversed; the judgment is otherwise affirmed.

Appellants shall have their costs on appeal.

Stone (W. A.), Acting P. J., and Brown (G. A.), J.,* concurred.

Respondents' petition for review by the Supreme Court was denied November 16, 1989.

---

* Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.