[No. A051605. First Dist., Div. Four. Apr. 21, 1992.]

TYME SAARI et al., Plaintiffs and Respondents, v.
JONGORDON CORPORATION, Defendant and Appellant.

**COUNSEL**

James L. English for Defendant and Appellant.

Steel, Clarence & Buckley, Thomas Steel and Stuart Buckley for Plaintiffs and Respondents.

## OPINION

**REARDON, J.**—A jury found in favor of respondents Tyme Saari, Peggy Dowling and Patrick Hinrichsen on their action for damages against appellant Jongordon Corporation for breach of a contract to cremate the remains of Robert Saari. The complaint had also alleged causes of action for negligent and intentional emotional distress. Motions for judgment notwithstanding the verdict and for new trial were denied.

Jongordon appeals from the judgment and the order denying judgment notwithstanding the verdict, contending that (1) Hinrichsen is not entitled to recover damages for emotional distress because he was not closely related to Robert Saari; (2) the $175,000 award of damages to Hinrichsen was excessive; (3) judgment notwithstanding the verdict should have been granted on the claims of Saari and Dowling; and (4) the $62,500 award of damages for emotional distress to Saari was based on inadmissible evidence and/or was excessive. We affirm the judgment and the order denying judgment notwithstanding the verdict.

## I. FACTS

Respondent Patrick Hinrichsen was the close friend and longtime companion of Robert Saari. The two men lived together in a home they owned in joint tenancy. In December 1984, Robert Saari and Hinrichsen entered into a written agreement with appellant Jongordon Corporation, doing business as the Neptune Society.[1] Jongordon agreed that, on Robert's death, it would cremate his body and release his ashes to Hinrichsen. No religious service was to be performed.

In January 1985, Robert Saari died. His mother, respondent Tyme Saari, released her son's remains to Hinrichsen, who turned the body over to Jongordon. In violation of the terms of the contract, Jongordon scattered Robert's ashes at sea, performed a Christian religious service on his remains, and failed to release the ashes to Hinrichsen.

Richard Jongordon—the president and owner of Jongordon Corporation—agreed not to contact any of Robert's family about the mishandling of his ashes until Hinrichsen instructed him to do so. However, he telephoned Tyme Saari and respondent Peggy Dowling, Robert's sister, and informed them that although Hinrichsen had wanted to hold a party rather than a service for the deceased, Jongordon had performed a religious service and scattered the ashes at sea. He also told the two women that Hinrichsen was unable to attend the service as a result of illness.

---

[1] For convenience, we refer to the appellant as Jongordon throughout this opinion.

In July 1985, Tyme Saari, Dowling and Hinrichsen filed a complaint against Jongordon and others, each alleging causes of action for breach of contract, breach of covenant of good faith and fair dealing, negligence, intentional and negligent infliction of emotional distress, mishandling of dead bodies and breach of fiduciary duty.[2] They sought compensatory damages, attorney fees, costs and $500,000 in punitive damages.

Jongordon demurred to the complaint. The demurrer was sustained on the breach of contract and breach of covenant causes of action alleged by Saari and Dowling. In all other respects, the demurrer was overruled. Jongordon also moved for judgment on the pleadings on some causes of action alleged by Dowling and Hinrichsen. The motion was granted on Dowling's causes of action for negligence, mishandling of dead bodies and breach of fiduciary duty, but was otherwise denied. A motion for reconsideration was granted and these three causes of action were reinstated.

A first trial ended in a mistrial. At the second trial, Saari, Dowling and Hinrichsen withdrew the causes of action for negligent and intentional infliction of emotional distress on the basis that the underlying acts would be actionable as negligent mishandling. Ultimately, the jury found in their favor. Saari was awarded $62,500; Dowling, $5,000; and Hinrichsen, $175,000. The jury found that Jongordon acted with malice, oppression or fraud, but awarded Saari, Dowling and Hinrichsen only token punitive damages of $1 each. Judgment was entered accordingly. Both sides filed motions for judgment notwithstanding the verdict and for new trial, without success.

## II. EMOTIONAL DISTRESS

Jongordon first contends that Patrick Hinrichsen is not entitled to recover damages for emotional distress because he was not closely related to Robert Saari. This argument assumes that Hinrichsen's right to recover sounded in tort, thus ignoring the obvious—that he also sought recovery based on the contract he and Robert Saari formed with Jongordon. (See Health & Saf. Code, § 7100.)[3] The duty Jongordon owed Hinrichsen flowed from the contract and the statutory scheme, not from any tort duty based on a special relationship.

---

[2]Negligent mishandling of human remains is not an independent tort, nor is negligent infliction of emotional distress. However, these names are convenient terminology describing the context in which negligent conduct occurs. (See *Christensen* v. *Superior Court* (1991) 54 Cal.3d 868, 884 [2 Cal.Rptr.2d 79, 820 P.2d 181].)

[3]Section 7100 of the Health and Safety Code provides that "[t]he right to control the disposition of the remains of a deceased person, unless other directions have been given by the decedent, vests in, and the duty of interment and the liability for the reasonable cost of interment of such remains devolves upon the following in the order named: [¶] (a) The

After briefing was completed, the California Supreme Court announced a new decision affecting cases such as the one before us. (See *Christensen* v. *Superior Court, supra,* 54 Cal.3d 868.) The parties submitted letters explaining their views of the impact of this decision on our case. In its letter, Jongordon argued that *Christensen* implies that only family members are entitled to recover for emotional distress in mortuary remains cases.

Having read this decision carefully, we have a different view of it. As Jongordon concedes, *Christensen* did not directly address the issue of the standing of persons such as Hinrichsen to recover. The specific issue before the court was whether persons other than statutory right holders or contracting parties could recover for emotional distress. The court framed this issue by stating that the defendants sought "to *limit* liability to the statutory right holders or those who contract for funeral-related services . . . ." (*Christensen* v. *Superior Court, supra,* 54 Cal.3d at p. 896, italics added.) The court ultimately held that "the class of persons who may recover for emotional distress negligently caused by [a mortuary or crematorium] is not *limited to* those who have the statutory right to control disposition of the remains and those who contract for disposition." (*Id.,* at p. 876, italics added.) This language is instructive to us, as it suggests that the court assumed the right of recovery of statutory right holders and contracting parties existed, determining only the extent to which *other* persons were entitled to recover.

Another factor reinforces our conclusion that the court did not intend *Christensen* to preclude contracting parties from recovering for emotional distress. ■ In the typical contract case, it is not foreseeable that breach will cause emotional distress. Thus, a rule has evolved that damages for emotional distress are generally not recoverable in an action for breach of contract. However, some contracts—including mortuary and crematorium contracts—so affect the vital concerns of the contracting parties that severe emotional distress is a foreseeable result of a breach. (*Allen* v. *Jones* (1980) 104 Cal.App.3d 207, 211 [163 Cal.Rptr. 445].) The right to recover damages for emotional distress for breach of mortuary and crematorium contracts has been well established in California for many years. (See, e.g., *Chelini* v.

surviving spouse. [¶] (b) The surviving child or children of the decedent. [¶] (c) The surviving parent or parents of the decedent. [¶] (d) The person or persons respectively in the next degrees of kindred in the order named by the laws of California as entitled to succeed to the estate of the deceased. [¶] (e) The public administrator when the deceased has sufficient assets. . . . [¶] A decedent, prior to his death, may direct the preparation for, type or place of interment of his remains . . . . The person or persons otherwise entitled to control the disposition of the remains under the provisions of this section shall faithfully carry out the directions of the decedent subject only to the provisions of this chapter with respect to the duties of the coroner. . . . [¶] This section shall be administered and construed to the end that such expressed instructions of any person shall be faithfully and promptly performed."

*Nieri* (1948) 32 Cal.2d 480, 481-482 [196 P.2d 915].) If the California Supreme Court intended to disapprove this firmly entrenched principle of contract law, it would have done so expressly. If anything, *Christensen* suggests in dicta that this legal principle is still valid. In that decision, the court noted that "[e]ven in the context of an action for breach of contract, where recovery of damages solely for emotional distress resulting from a breach is not normally allowed, the provision of services related to the disposition of human remains has been distinguished because of the unique nature of the services." (*Christensen* v. *Superior Court, supra,* 54 Cal.3d at pp. 894-895.) Jongordon's interpretation of *Christensen* is too slim a basis on which to ignore an accepted principle of existing law. (See *Luck* v. *Southern Pacific Transportation Co.* (1990) 218 Cal.App.3d 1, 19 [267 Cal.Rptr. 618], cert. den. __ U.S. __ [112 L.Ed.2d 309, 111 S.Ct. 344].) Hinrichsen was entitled to seek damages for emotional distress as part of his damages for breach of the crematorium contract.[4]

### III. JUDGMENT NOTWITHSTANDING THE VERDICT

Next, Jongordon contends that its motion for judgment notwithstanding the verdict should have been granted as to the claims of Saari and Dowling. It challenges their standing to recover damages for emotional distress, arguing that their close relationship to Robert Saari did not automatically qualify them as direct victims of its negligent conduct. It urges that its conduct must be directed at a particular plaintiff in order for that plaintiff to recover, thus limiting the class of plaintiffs to the deceased's designated recipient and anyone whom the mortuary was aware would have contact with the remains. As Saari and Dowling were not the intended recipients of the ashes, nor was it planned that they would attend the private ceremony Hinrichsen intended to hold, Jongordon contends that they cannot recover for emotional distress.

In essence, Jongordon contends that Saari and Dowling were not the direct victims of its conduct—as if the mother and sister of the deceased were mere bystanders who observed an injury inflicted on their son and brother. The defendants in *Christensen* made much the same argument, which the court rejected. Those plaintiffs did "not seek relief on the basis of witnessing the injury of another, but for an injury caused by the breach of a duty owed directly to each plaintiff." (*Christensen* v. *Superior Court, supra,* 54 Cal.3d at p. 899.)

In a letter from counsel arguing the impact of *Christensen* on this case, Jongordon again contends that Saari and Dowling are not persons for whose

---

[4]Hinrichsen also urges that his recovery is properly based on his status as the person authorized by statute to dispose of Robert Saari's remains. As we find the contract supports his recovery, we need not determine this matter.

benefit the crematory services were rendered—that they were only to benefit Hinrichsen as the person designated to receive the ashes. *Christensen* disposes of this argument, as well. ■ "[T]he identity of the individual who actually contracts for . . . crematory services . . . is incidental, and is not a reliable indicator of the family members who may suffer the greatest emotional distress if the decedent's remains are mishandled. . . . There is no reason to assume that the person who makes the arrangements is any more susceptible to emotional distress if the services are not competently performed than are the other family members." (*Christensen* v. *Superior Court, supra,* 54 Cal.3d at p. 887.) Crematoria owe a duty "to close family members who were aware that funeral and/or crematory services were being performed, and on whose behalf or for whose benefit the services were rendered." (*Id.,* at p. 876; see *Quesada* v. *Oak Hill Improvement Co.* (1989) 213 Cal.App.3d 596, 605, 608-609 [261 Cal.Rptr. 769]; *Draper Mortuary* v. *Superior Court* (1982) 135 Cal.App.3d 533, 538 [185 Cal.Rptr. 396].) A parent or sibling qualifies as a close relative. (*Thing* v. *La Chusa* (1989) 48 Cal.3d 644, 668, fn. 10 [257 Cal.Rptr. 865, 771 P.2d 814].) Jongordon "undertook to provide appropriate and dignified services of the type that bereaved family members normally anticipate." (See *Christensen, supra,* at p. 886.) The right of recovery extends to "*all close family members for whom mortuary services are performed* when the misconduct comes to light, regardless of which family member held the statutory right or actually contracted for the services . . . ." (*Id.,* at p. 890, italics added.) *Christensen* assumes that close family members are persons for whom those services are performed as long as they are aware of the death and the nature of the services performed. (*Id.,* at pp. 896 [excluding from the class of potential plaintiffs those close relatives who are infants, the unborn and those unaware of the death or the nature of the services performed], 898, 906.) ■ Saari's telegram and Richard Jongordon's telephone calls to Saari and Dowling provide substantial evidence that the two women were aware of Robert Saari's death and that crematory arrangements had been made.[5] Nor does the record suggest that Saari and Dowling—who visited Robert during his last illness—were estranged from him. Jongordon assumed a duty to Robert Saari's mother and sister when it agreed to provide cremation services for him, thereby creating a special relationship obligating it to perform those services in the dignified and respectful manner the bereaved expect of crematory operators. (See *id.,* at pp. 890-891; see *Quesada* v. *Oak Hill Improvement Co., supra,* 213 Cal.App.3d at p. 610.)

■ Jongordon also argues that there was no substantial evidence that Tyme Saari suffered serious emotional distress. At trial, Saari testified about

---

[5]This conclusion is also bolstered by Jongordon's literature, suggesting that family members are the intended beneficiaries of funeral arrangements.

the effect of the mishandling on her. Among other effects, she stated that at night, she lay awake wondering what had happened to her son's remains. On appeal, Jongordon contends that this uncertainty about the disposition of her son's remains cannot form the basis of a recovery for emotional distress.

To recover for emotional distress, a plaintiff must establish "a well-founded substantial certainty that [the] decedent's remains were among those reportedly mistreated . . . . A generalized concern that the remains of a relative may have been involved . . . is insufficient to satisfy the requirement that there be a direct connection between a defendant's conduct and the injury suffered by the plaintiff." (*Christensen* v. *Superior Court, supra,* 54 Cal.3d at p. 902.) This speaks to a different matter than that raised in our case. The issue in *Christensen* was whether persons who were uncertain if their decedent's remains were actually mishandled could recover for emotional distress arising from this uncertainty. Saari's claim is not that she does not know *if* Robert's remains were mishandled, but that she is not certain what actual disposition was made of his ashes. As Saari's uncertainty does not raise any doubt about whether there was a breach of duty, *Christensen* does not preclude this basis of recovery for emotional distress.

We are also satisfied that there is substantial evidence to support Saari's award of damages. ■ When a trial court considers a motion for judgment notwithstanding the verdict, it applies the substantial evidence test. (*Bank of America* v. *Superior Court* (1990) 220 Cal.App.3d 613, 623-624 [269 Cal.Rptr. 596], cert. den. __ U.S. __ [112 L.Ed.2d 1051, 111 S.Ct. 964].) The court may not weigh the evidence or judge the credibility of witnesses. If the evidence is conflicting or if several reasonable inferences may be drawn from it, the motion should be denied. The motion may only be granted if it appears from the evidence, viewed in the light most favorable to the party securing the verdict, that there is no substantial evidence to support the verdict. "If there is any substantial evidence, or reasonable inferences to be drawn therefrom, in support of the verdict, the motion should be denied." (*Wiley* v. *Southern Pacific Transportation Co.* (1990) 220 Cal.App.3d 177, 190 [269 Cal.Rptr. 240], internal quotation marks omitted.) ■ At trial, Saari testified that Jongordon's telephone call left her "shaking like a leaf"; that she distrusted his statements about the actual disposition of her son's ashes; that she cried and was a nervous wreck after this incident. She was shocked when she received a death certificate from Jongordon on which had been written "AIDS." She felt "dragged out," unable to do anything or go anywhere. There was medical evidence that Jongordon's conduct caused Saari to become depressed. There is substantial evidence to support the

jury's verdict that Jongordon's mishandling of Robert Saari's ashes and its subsequent conduct[6] caused his mother to suffer emotional distress.

■ Saari and Dowling were the direct victims of Jongordon's mishandling and are entitled to recover damages for negligent infliction of emotional distress resulting from its breach of the duty owed to them as the bereaved family of Robert Saari.[7] ■ As there was substantial evidence to support the jury's verdict in favor of Saari, the trial court properly denied the motion for judgment notwithstanding the verdict. (See *Wiley* v. *Southern Pacific Transportation Co., supra,* 220 Cal.App.3d at p. 190.)

## IV. EXCESSIVE DAMAGES

### A. *Hinrichsen*

Jongordon also contends that the $175,000 award of damages to Hinrichsen is excessive. ■ We must reverse or reduce an award of compensatory damages if the defendant shows that it is so grossly disproportionate to any reasonable view of the evidence as to raise a strong presumption that it is based on prejudice or passion. (*Schroeder* v. *Auto Driveaway Co.* (1974) 11 Cal.3d 908, 919 [114 Cal.Rptr. 622, 523 P.2d 662].) ■ Jongordon challenged the Hinrichsen award as excessive in its motion for new trial, which was denied. Thus, this issue has been preserved for appeal. (See *id.,* at p.

---

[6]Several of Jongordon's arguments hinge on its assertion that because the jury did not hold Richard Jongordon personally liable but found only the corporation to be liable, it must have disbelieved all evidence other than the mishandling of the ashes itself. We disagree. The jury was instructed that Richard Jongordon was the agent of the corporation, making his acts or omissions attributable to the corporation. During deliberations, the jury asked for clarification of this issue. The court advised the jury that the corporation was responsible for the acts of its agent. It explained that if it found the agent liable, it must find the corporation was also liable. It also explained that Richard Jongordon was responsible for his own acts and that the jury could find both the agent and the corporation responsible for the same acts. The jury, not satisfied with this response, sought additional clarification about whether, if it found the corporation responsible, it had to also find Richard Jongordon individually liable. The court's response was: "No, not necessarily." We presume that the jury followed the trial court's instructions. (*Rodgers* v. *Kemper Constr. Co.* (1975) 50 Cal.App.3d 608, 629-630 [124 Cal.Rptr. 143].) These instructions are consistent with a finding that the jury imputed Richard Jongordon's acts and omissions to the corporation and held the corporation liable for them, while determining that it would not hold him personally responsible for them. As there was no dispute that Richard Jongordon acted within the scope of his authority or employment, we are satisfied that this interpretation of the verdict is proper. Thus, we may consider all evidence presented against Richard Jongordon and the corporation when we determine the issues presented in this appeal.

[7]Saari also contends that her recovery is properly based on her status as the person authorized by statute to dispose of Robert Saari's remains. In light of the conclusion that her close relationship with her son provides the legal support for her recovery, we need not decide this matter.

918; *Godfrey* v. *Steinpress* (1982) 128 Cal.App.3d 154, 187 [180 Cal.Rptr. 95]; see also Code Civ. Proc., § 657, subd. 5; 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 314, pp. 325-326.)

Jongordon raises two challenges to Hinrichsen's award. ■ First, it contends that the mishandling of Robert Saari's remains was only one cause of Hinrichsen's emotional distress. This argument is doubly flawed. It assumes that the jury based its award only on the mishandling of the ashes, not on any other Jongordon conduct. We have already rejected a similar attempt to restrict our review of the jury's verdict. (See fn. 6, *ante*.) It also assumes that the jury did not separate out that distress attributable to Jongordon's conduct and that attributable to Robert Saari's death and Hinrichsen's own exposure to AIDS. However, the jury was instructed that Hinrichsen was not entitled to recover for any preexisting condition, although he could recover for any aggravation of that condition. To accept Jongordon's argument would require us to assume that the jury had ignored these instructions. This, we may not do. (See *Rodgers* v. *Kemper Constr. Co.*, *supra*, 50 Cal.App.3d at pp. 629-630.)

Jongordon's second challenge is based on Hinrichsen's failure to seek psychiatric treatment. Again, the jury was instructed on this issue. "When one does not use reasonable diligence to care for his injuries and they're aggravated as a result of such failure, the liability, if any, of another whose act or omission was a legal cause of the original injury must be limited to the amount of damage that would have been suffered if the injured person himself had exercised the diligence required of him. [¶] From the mere fact that a competent physician advised an injured person to submit to a course of treatment . . .[,] you're not justified in inferring that the injured person was negligent or unreasonable in declining such treatment. Other factors as they confronted the injured person must be considered in determining whether, although he refused to follow the [physician's] advice he nevertheless exercised reasonable diligence in caring for . . . himself." The jury was instructed to consider this question. We presume that it followed the trial court's instructions and that its verdict reflects the legal limitations those instructions imposed. (See *Rodgers* v. *Kemper Constr. Co.*, *supra*, 50 Cal.App.3d at pp. 629-630.)

The evidence presented to the jury indicated that Hinrichsen quit a promising job as a result of the mishandling and was only sporadically employed for over a year. He was depressed and withdrawn, unable to concentrate on his work, almost suicidal. Like Tyme Saari, he was uncertain of the actual disposition of Robert Saari's remains. Based on a reasonable view of this evidence, the verdict does not appear to be so grossly disproportionate as to raise a presumption of prejudice or passion. (See *Schroeder* v. *Auto Driveaway Co.*, *supra*, 11 Cal.3d at p. 919.)

## B. *Saari*

Finally, Jongordon contends that the $62,500 award of emotional distress damages to Tyme Saari was based on inadmissible evidence and was excessive. The inadmissible evidence argument is easily dismissed. In it, Jongordon contends that all evidence of uncertainty as to the disposition of Robert Saari's remains should have been excluded on the ground that she was not entitled to recover for emotional distress based on an uncertainty. We have already disposed of the underlying assumption. (See pt. III, *ante.*) This new argument is no more tenable.

Alternatively, Jongordon argues that the jury's award of $62,500 was excessive. It made this argument in its motion for new trial, which was denied. This issue has been preserved for appeal. (See *Schroeder* v. *Auto Driveaway Co., supra,* 11 Cal.3d at p. 918; *Godfrey* v. *Steinpress, supra,* 128 Cal.App.3d at p. 187.) We have already set out the evidence presented at trial on the effect of Jongordon's acts on Tyme Saari. (See pt. III, *ante.*) Based on this evidence, the verdict does not appear to be so grossly disproportionate as to raise a presumption of prejudice or passion. (See *Schroeder* v. *Auto Driveaway Co., supra,* 11 Cal.3d at p. 919.)

The judgment and the order denying judgment notwithstanding the verdict are affirmed.

Anderson, P. J., and Perley, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 25, 1992.